The People of the State of Illinois, ex rel. Emily Forbrich, Plaintiff-Appellee, v. Francis A. Forbrich, Defendant-Appellant.

Gen. No. 53,186.

First District, Fourth Division.

July 23, 1969.

Walter R. Stewart, of Champaign, and Theodore Pollock, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Daniel P. Coman, Chief of Civil Defense, and Ronald Butler, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendant filed a petition under section 72 of the Civil Practice Act, Ill Rev Stats 1967, c 110, § 72, to vacate a judgment entered against him "by consent" in a proceeding under the Uniform Reciprocal Enforcement of Support Act, Ill Rev Stats 1967, c 68, § 50, et seq., for support monies in behalf of a spouse and minor children. Plaintiff waived filing an answer to the petition for post-judgment relief. After a hearing an order was entered denying the relief sought. On appeal from that order defendant raises several issues, the primary one being:

> [w]hether the facts and circumstances in this case show that the defendant was denied adequate notice of the proceedings, an opportunity to be heard, the assistance of counsel, the equal protection of the laws and procedural due process of law.

EVIDENCE

It is undisputed that on April 5, 1966, the Cook County Department of Public Aid, Court Service Division, received from the Family Court of Suffolk County, New

York, pursuant to the Uniform Reciprocal Enforcement of Support Act, a sworn petition, sworn testimony and an exemplified copy of a judge's certificate ordering defendant to pay support in the sum of $80 per week. Upon receipt of said document, a caseworker for the Court Service Division notified defendant by letter and requested him to present himself at the Chicago office. After obtaining one postponement because his attorney was out of town, defendant did appear for a conference with caseworker Thomas F. Coen, the substance of which is disputed. A draft order which purported to show defendant's agreement to pay support to his family in the amount of $130 per month was presented to him. He signed it under the heading "approved" and also signed a statement, which was part of the draft order, that he voluntarily entered his appearance, waived service of summons and had read and understood the contents of the above mentioned agreement; however, defendant struck the word "voluntarily" from this latter statement before he signed it.

On March 12, 1968, defendant petitioned the trial court for post-judgment relief. After a hearing, the motion was denied and defendant appealed.

Testimony of Defendant:

He received the letter requesting a conference, but he got one postponement because his attorney was out of town. His request for a second postponement, because his attorney was still out of town, was denied by caseworker Coen. He then went to the conference thinking it was a conciliation conference. He did not know Coen's position, but thought that Coen was either a judge or a policeman or someone with authority. During the interview Coen made some notes and then left the room for about ten minutes. When Coen returned he had a draft order which he showed to defendant. It was at this point that defendant realized what the conference was really

about. Defendant read the draft order, and then Coen told him to sign it. Defendant said to Coen that he did not want to sign it until his attorney had looked at it. Coen told him to sign it "or else." Defendant then asked to be allowed to take a copy of the draft order to an attorney, and the request was denied. Coen then told him either to sign the order immediately or he would be thrown in jail. He believed that Coen had the power to throw him in jail immediately, so he signed the order. When Coen was not looking, defendant struck the word "voluntarily" from the order. He asked for a copy of the draft order and that request was denied.

Testimony of Thomas F. Coen, for the State:

Defendant did come to his office for the second appointment. The first appointment had been cancelled because defendant's attorney was not available. Defendant did not bring his attorney to the conference, and did not request a second postponement. Under his direction a secretary prepared the draft order. He did not see defendant strike out the word "voluntarily." He did not threaten defendant with incarceration, nor did he tell the defendant to sign the draft order "or else." He told defendant that if he refused to sign the draft order the matter would be referred to the State's Attorney's office for legal action. Defendant did not request a copy of the draft order which he signed.

OPINION

In the instant case the judgment is based upon a "consent order" which defendant alleges that he signed involuntarily and under duress. Coen admits that he told defendant that if defendant did not sign the order, the matter would be turned over to the State's Attorney's office for legal action. Defendant testified that Coen told him to sign the order or he would go to jail. It may well be, however, that this was defendant's reflexive interpretation of Coen's threat to turn the case over to the

State's Attorney for legal action. The defendant testified that he thought that Coen had the power to imprison him. The striking out of the word "voluntarily" indicates that defendant was performing an act against his will; and it appears that defendant performed that act because of the threat imposed by Coen. We need not decide whether Coen actually threatened defendant with jail; it is sufficient that Coen refused to allow defendant to seek legal advice and an explanation of his rights, and then obtained defendant's signature on the order after threatening to send the matter to the State's Attorney for legal action. Indeed, the State's Attorney recognizes the possibility of a respondent unwillingly signing a consent order because of ignorance of his legal rights. In an affidavit attached to plaintiff's brief as Appendix A, William H. McGowan, Director of the Division of Court Services, explains the procedures to be followed in handling cases under the Uniform Reciprocal Enforcement of Support Law. Among them is the following:

> That the respondent is informed of his rights to seek legal counsel and that he is also informed that he may have his case tried by a judge in a court of law, if he so desires.

In the instant case those procedures were not followed and defendant was, perhaps unintentionally, coerced into signing the order.

Under these circumstances and because of the importance of insuring that each individual will not be deprived of a hearing, the judgment is reversed and cause is remanded with directions to vacate the judgment of July 26, 1966, and for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ENGLISH and McNAMARA, JJ., concur.