*In re* RACHEL YVONNE SIMS.—(VICKI SIMS *et al.*, Petitioners-Appellants, *v.* RACHEL SIMS, a Minor *et al.*, Respondents-Appellees.)

(No. 12607;

Fourth District—July 17, 1975.

SIMKINS, P. J., dissenting.

Grady E. Holley, of Springfield, for appellant Leslie Greer.

Robert L. Mueller, of Springfield, for appellant Vicki Sims.

Mark Rabin, of Springfield, for appellee Child and Family Services.

Mr. JUSTICE GREEN delivered the opinion of the court:

On September 6, 1973, Jayne Brickley-McDonald, on behalf of Child and Family Services of Sangamon County, filed a petition under the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 704—1) in the circuit court of Sangamon County requesting that Rachel Sims, born August 29, 1972, be declared a ward of the court and that a guardian be appointed with the authority to consent to her adoption. The petition was heard by the court on September 25, 1973, and evidence of consent to adoption on the part of Vicki Sims, the natural mother, and Les Greer, the natural father, was presented in the form of written consents and oral testimony. The court entered an adjudicatory order relieving the natural parents of their parental rights and a dispositional order appointing the director of Child and Family Services of Sangamon County as guardian and authorizing him to consent to adoption.

Les Greer petitioned to vacate the adjudicatory and dispositional orders of September 25, 1973, and Rufus Greer, paternal grandfather of Rachel Sims, filed a post-trial motion for rehearing. After hearing, both the petition to vacate and the motion for rehearing were denied on November 26, 1973. On December 10, 1973, Vicki Sims filed a petition to vacate the adjudicatory and dispositional orders of September 25, 1973, on the basis of duress. After hearing, the petition was denied and the orders of September 25, 1973, were "confirmed" by order entered February 1, 1974. Vicki Sims and Les Greer appeal from that order.

■■ Appellee Ronald P. Stauffer, executive director of Child and Family Services of Sangamon County, contends that the trial court lacked jurisdiction to hear the petition of Vicki Sims filed on December 10, 1973, because it requested a rehearing on or modification of the adjudicatory and dispositional orders of the court and was filed more than 30 days after the entry of those orders in violation of section 68.3 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 68.3). Appellants Vicki Sims and Les Greer contend the petition was timely because it was filed within 30 days of the court's denial of Les Greer's petition on November 26, 1973. We need not rule as to the application of the 30-day provision of section 68.3 to these facts, however, because we deem Vicki Sims' petition to meet the requirements of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 72). The obtaining of the entry of an order by duress is a proper ground for relief under that section (*People ex rel. Forbrich v. Forbrich*, 113 Ill.App.2d 249, 252 N.E.2d 21) and such

a petition may be filed not less than 30 days nor more than 2 years after the entry of the order attacked.

The evidence was undisputed that on August 29, 1972, Vicki Sims gave birth to Rachel Sims. At the time of the baby's birth, Vicki Sims was a 16-year-old Caucasian high school student. Les Greer, the baby's natural father, was a 19-year-old black high school graduate. Both of the natural parents lived with their respective parents and continued to do so at the time of the proceedings. Prior to and after the baby's birth, Vicki Sims consulted with social workers employed by the Child and Family Services. Les Greer also discussed the situation with these social workers.

Vicki's parents did not allow Vicki to keep the baby at home, and for the first 9 or 10 months of the baby's life, she was cared for at the home of Chris White, a high school teacher and friend of Vicki's. Vicki visited the baby frequently during this period. On one occasion Vicki moved out of her parent's home for about a week and attempted to care for Rachel on her own. After that the baby was taken to the home of Rufus Greer, Les Greer's father, and lived there for a couple of months.

Vicki testified that when she first brought the baby home from the hospital, her father told her that either he or the baby would have to leave and that she, Vicki, had to sign papers giving up the child. While Rachel was kept at Chris White's, Vicki's father continued to be upset. Vicki was forbidden to see the child but did so frequently. She further testified that in July, 1973, her father, while excited and angry, came to Chris White's while she, Vicki, was there with the baby and told her that she either had to give up the baby or not come home that night. Chris White confirmed this episode and said that the father was yelling and Vicki crying. Miss White also testified to receiving an angry call from Vicki's mother that day. Vicki testified that after this episode she attempted to live alone with the baby in an apartment for a while but gave up on this scheme because she did not have enough money and took the baby to stay with Les Greer. She said she continued to see Rachel until one day in early August, 1973, her father again told her she had to sign adoption papers or leave home. On August 7, 1973, she signed a document surrendering the child to appellee Stauffer in his official capacity and consenting to the adoption of the child without further notice to her.

Jayne Brickley-McDonald testified that she was a case worker for Child and Family Services and had been working with Vicki. On July 27, 1973, Vicki approached her and said that she wanted to relinquish her rights on that day. Vicki appeared upset and stated that she didn't feel she could raise Rachel by herself and that neither she nor the baby could live a satisfactory life in an apartment without any other help.

Vicki said that she wanted to take the consent form to her parents to show them that she would sign it. Mrs. McDonald said that she did not allow the consent to be signed that day. The witness further stated that she talked with Vicki on July 30 and August 3 and let Vicki sign the consent on August 7. That day Vicki told Mrs. McDonald that her experience in trying to live on her own convinced her that she was not ready to raise Rachel. Mrs. McDonald then saw Vicki once or twice before the hearing of September 25, 1973, and Vicki continued to indicate that she wanted to proceed with the adoption but admitted that she was seeing the child, who was still at Les Greer's.

At the September 25 adjudicatory hearing, Vicki Sims testified that she had signed the relinquishment paper voluntarily and was testifying of her own free will. She said that she had only discussed adoption with her parents once after the baby was born and that although they wanted her to go ahead with adoption, they told her she could do what she wanted to do. She also testified that her parents would not allow the baby in their home because of prejudice and that a friend kept the child for 9 or 10 months. She said that she had voluntarily talked with social workers at Child and Family Services about the courses available to her but that they had not told her what to do. She testified several times that she realized that her consent to adoption meant relinquishing her rights to the child forever. She also indicated that she had considered that the child might not be adopted because of the difficulties of placing racially mixed children and might be raised in foster homes and still considered that it was in the best interest of the child to give her up. She testified that although Les Greer did not at first want to give the baby up and his father wanted to keep the child, she still felt that it was in the best interest of the child to give her up. In testifying on the petition to vacate, Jayne Brickley-McDonald said that Vicki told her at the time of the September 25 hearing that she had spent the previous weekend away from her parents and still felt that she was making the right decision. Mrs. McDonald said that on December 4, 1973, however, Vicki told her that she had made a mistake and wanted to get the baby back.

■■ At the times of the execution of the consent in question and the hearing on September 25, 1973, the statutory provision governing the revocability of consents to adoption of the type in issue stated that they:

"* * * shall be irrevocable unless it shall have been obtained by fraud or duress and a court of competent jurisdiction shall so find. The consent of a parent who is a minor shall not be voidable because of such minority." (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—11.)

Effective October 1, 1973, the foregoing provision was amended to provide that the fraud or duress supporting a revocation must have been

committed by the person taking the acknowledgment to the consent or surrender or the adopting parents or their agents. Thus, duress from persons such as Vicki's parents would be immaterial. The prior law governs this case, however.

As to the termination of the parental rights of Vicki Sims, the adjudicatory order was based on her written surrender and consent to adoption signed on August 7, 1973, and her testimony of September 25 confirming the execution of that document and stating that she could not properly care for the child. Her contention on appeal is that her execution of the consent and her testimony acquiescing to it was done under the duress of the conduct of her parents. The axiom that no two cases are exactly alike is particularly applicable to those involving allegation of duress. In *People ex rel. Drury v. Catholic Home Bureau*, 34 Ill.2d 84, 213 N.E.2d 507, a 28-year-old unmarried school teacher sought to revoke a consent she had given to the adoption of her child. She was undergoing mental treatment and was advised by those treating her to give the baby up for adoption, as did her fiance, who may have been the baby's father. Her mother and stepfather strongly objected to her keeping the child. After discussion with representatives of the Catholic Home Bureau concerning the options available and the irrevocability of the consent, she signed the consent about 2 weeks after the baby's birth. In a later proceeding seeking return of the child, a trial court ruling finding that the consent was not obtained by duress was affirmed on appeal. The Illinois Supreme Court stated:

"The applicable rules of law are not in doubt. As this Court said in *Stoltze v. Stoltze*, 393 Ill. 433, 442:

'Duress has been universally defined as a condition which exists where one is induced by the unlawful act of another to make a contract or perform or forego an act under circumstances which will deprive him of the exercise of his free will. There must be such compulsion affecting the mind as shows that the execution of the contract or other instrument was not the voluntary act of the maker. Such compulsion must be present and operate at the time the instrument was executed. The burden of proving such duress is on the person asserting it. [Citations.]

Mere annoyance or vexation will not constitute duress, but there must be such compulsion affecting the mind as shows that the execution of the contract or other instrument is not the voluntary act of the maker. [Citations.]

Mere advice, argument or persuasion does not constitute duress or undue influence if the individual acts freely when he executed the questioned documents though the same would not have been

executed except for the advice, argument or persuasion. [Citation.]" (34 Ill.2d 84, 92-93, 213 N.E.2d 507, 511.)

In *People ex rel. Buell v. Bell*, 20 Ill.App.2d 82, 155 N.E.2d 104, the trial court's finding of fraud and duress was upheld where there was evidence that the mother's ex-husband told her that the State might take away her other children if she tried to keep the baby, that the consent was signed the day the baby was born and while the mother was under medication, that the doctor who delivered the mother told her that she had 6 months to reclaim the baby, and that the mother began to take action to get the baby back on the next day after the consent was signed. In *In re Huebert*, 132 Ill.App.2d 793, 270 N.E.2d 464, the court reversed a finding of lack of fraud and duress where, *inter alia*, the natural mother's consent to adoption was signed 2 days after it was suggested by a friend of the mother's who was emotionally involved with the mother's husband and planned to run away with him, the mother's husband had told her he had lost his job and was leaving her, the consent was signed during one brief interview at the Department of Public Aid where no alternatives were discussed, and the mother changed her mind the same day the consent was signed.

In the case under consideration, at the time of pronouncing his ruling on the petition to vacate, the trial judge stated that he felt that regardless of the situation at the time that Vicki executed the consent, at the time of the adjudicatory and dispositional hearings on September 25, 1973, when she informed the court of her desire to give up the child, she was free from duress. He believed that she later had a change of heart about giving up the child. Mrs. McDonald had proceeded with caution in waiting a week after Vicki's request before accepting a consent from her. More than 2½ months had elapsed between the time of the early July episode when Vicki's father threatened her at Chris White's house and the adjudicatory hearing. Furthermore, Vicki had done nothing to seek to set aside the adjudicatory and dispositional orders for some time after their entry.

■■ Nevertheless, we find the undisputed actions of Vicki's parents to constitute duress as a matter of law. They did not merely argue and persuade as in *Drury* but conditioned their parental love of their daughter and their fulfillment of their legal obligation to support her during her minority on her consenting to the adoption. Vicki was only 16 when the child was born and only 17 when the consented was executed. She deliberated as to what course to take for a long time, but the evidence is undisputed that her parents' threats were always present.

Adoption may be the best course for the child and the parents. Vicki may be unable to care for the child. Since the legal proceeding to de-

prive Vicki of her parental rights was based on her consent, however, that consent must have been given free from duress, and we believe that the only conclusion that can be drawn from the evidence here is that such was not the case.

■■ Appellant Les Greer asks that if the adjudicatory and dispositional orders be set aside as to Vicki Sims, they be set aside as to him as well. He cites no authority. The termination of parental rights of one parent is usually a matter separate and apart from and not contingent upon the termination of these rights of the other parent. When, however, the action is based on consent and involves the appointment of a guardian with power to consent to adoption a different rule is applicable. A guardian cannot serve in lieu of one parent and not in lieu of the other. Thus, no useful purpose is now served by having the adjudicatory and dispositional orders stand against him.

The petition of Vicki Sims requested that the adjudicatory and dispositional orders be vacated and that Rachel be returned to her. We rule that this should have been done. Accordingly, we reverse and remand the cause to the circuit court of Sangamon County with directions that the adjudicatory and dispositional orders be vacated as to all parties and that Rachel Sims be returned to Vicki Sims. Since we have ruled that the consent of Vicki Sims, which is the basis for the relief requested in the petition, is invalid, we also direct the petition be dismissed in bar of action, as to all parties.

Reversed and remanded with directions.

TRAPP, J., concurs.

Mr. PRESIDING JUSTICE SIMKINS, dissenting:

I dissent. The burden of establishing duress is upon the person asserting it. (*People ex rel. Drury v. Catholic Home Bureau*, 34 Ill.2d 84, 92, 213 N.E.2d 507.) The issue is to be resolved by the trier of fact, and its judgment will be affirmed on review unless contrary to the manifest weight of the evidence. (Drury, at 94.) If the judgment of the trial court, on the issue of duress in the obtaining of a consent to adoption, is against the manifest weight of the evidence a reviewing court will reverse. (*In re Huebert*, 132 Ill.App.2d 793, 270 N.E.2d 464.) The question before the trial judge was, in my view, a question of fact. He had before him sworn testimony of the petitioner, Vicki Sims, given at the adjudicatory hearing that her consent was voluntarily given as was her testimony. She also testified on that occasion that she realized that her consent meant a relinquishment of her rights to the child forever and that she felt it to be in the best interest of the child to consent to the adoption. The judge

was also aware that the personnel of the Department of Child and Family Services refused to permit her to sign the consent on the date of her first request, and did not do so until she had discussed the matter on three subsequent occasions. In addition they had, on one or two occasions, discussed the matter with petitioner after the consent was signed and before the hearing. Almost 3 weeks elapsed between the filing of the petition and the adjudicatory and dispositional hearings which were had on September 25, 1973. It was not until December 4, 1973, that petitioner indicated that she wanted the child returned to her, and her petition to vacate the order of September 25 was filed December 10, 1973.

In short, the trial judge was confronted with an issue of fact, and his judgment is, in my view, clearly not against the manifest weight of the evidence.

How that which was a question of fact in the trial court became a question of law in this court is a matter which escapes me. I would affirm the judgment above.