(No. 18234.—

GROVER MILLAGE *et al.* Appellees, *vs.* DELLA NOBLE *et al.* Appellants.

*Opinion filed April 20, 1929.*

ROBERT G. HAMMOND, A. C. & B. F. ANDERSON, and JOHN T. KINCAID, guardian *ad litem,* for appellants.

T. N. COFER, CRAIG & CRAIG, and C. H. FLETCHER, guardian *ad litem,* for appellees.

Mr. Justice Stone delivered the opinion of the court:

This cause comes on appeal from a decree of the circuit court of Coles county setting aside the will of James Millage, deceased, on the grounds of mental incompetency of the testator and undue influence on the part of the testator's daughter Della Noble and her husband, Ernest Noble, in the procurement of the execution of the will. The cause was tried before a jury, who found for the contestants on both grounds alleged in the bill. Charles Millage, Harry Millage, Della Noble, and the National Trust Bank of Charleston, as executor and trustee for Emma Hudson and Otto Johnson under the will, appealed.

James Millage executed his last will and testament on January 26, 1922. He died on March 3, 1926, at the age of seventy-nine years. He was a man of but little education but had through his own efforts acquired a farm of 216 acres. His wife pre-deceased him. He was survived by eleven children. In 1919 he suffered a stroke of paralysis, which rendered his left arm and left leg useless. Thereafter until his death it was necessary that someone take care of him. After the death of his wife, in 1920, the testator's son John and his wife moved into the testator's home and took care of him until 1921, when he was taken to the home of his daughter Della Noble, where he remained until his death. He was at her home at the time of the execution of the will. By its terms he directed that his executor sell all his real and personal property at public or private sale, and after payment of his funeral expenses and cost of administration the balance of the proceeds was to be divided in the following manner: To his daughter Elizabeth Black $1000; to his daughter Rosa Roberts $1000; to his daughter Anna Lee $1000; one-twelfth part, less $1000, to his son Alph; one-twelfth part, less $1000, to his son Allie; one-twelfth part, less the sum of $1000, to his son Grover; one-twelfth part, less the sum of $1500, to his son John;

one-twelfth part and $2125 to his daughter Della Noble; one-twelfth part and $2125 to his son Charles; one-twelfth part and the sum of $2125 to his son Harry; one-twelfth part, less the sum of $1000, to the National Trust Bank of Charleston, Illinois, in trust for the use of his grandson Otto Johnson, son of his deceased daughter, Ella with the direction that the trustee pay $50 annually, payable semi-annually, to said grandson, and should he become ill and need additional amount for his proper care, then the trustee should furnish such amount as should be proper and necessary for the extra expense during his illness and his inability to earn his own support as in the good judgment of the trustee may seem proper, and should he die before the trust fund, together with the income, is consumed, without a bodily heir or heirs, the remaining portion, after paying funeral expenses, to be distributed equally among his children, share and share alike, the bodily heir or heirs of a deceased child of the testator to receive the share the parent would have received. The remaining one-twelfth part, and the sum of $2125 in addition thereto, he devised to the National Trust Bank of Charleston in trust for his daughter Emma Hudson, the trustee to pay to her $300 annually, payable $100 every four months until said fund, together with interest thereon, shall be paid to her, and should she become ill and said sum not be sufficient to properly care for her, then the trustee was authorized to pay an additional amount for her care and comfort as may be deemed best by the trustee, and should the trust fund, together with the interest thereon, not be consumed prior to her death, then in such case, after the payment of her funeral expenses, the trustee should pay over the balance of the trust fund to the heir or heirs of her body, share and share alike. The will provides that should any of the legatees thereinbefore named, except his grandson Otto Johnson and his daughter Emma Hudson, depart this life before the testator, then the portion of his estate be-

queathed to him or her, as the case may be, should be divided among his or her bodily heir or heirs, share and share alike. He sets forth his reasons for deducting various amounts from the one-twelfth interests and adding to the others. He also appoints the National Trust Bank of Charleston, Illinois, executor and trustee. The will was admitted to probate in the county court of Coles county.

The bill sets out that Otto Johnson, son of a deceased daughter of the testator, is insane; that Emma Hudson is married and has five children, four of whom are of age and one, Lester Hudson, is an infant, and prays that a guardian *ad litem* be appointed for Johnson and Hudson. The court appointed Charles H. Fletcher guardian *ad litem* for these two defendants. A joint answer for both was filed by him as such guardian *ad litem*.

On the issue of mental incompetency and undue influence thirty-five witnesses were heard on behalf of proponents and eighteen on behalf of contestants. The evidence in the record was close, but for reasons hereinafter stated it is necessary to reverse the decree and remand the cause for another trial, and we will not, therefore, comment on the evidence.

One of the assignments of error is that the court erred in instructing the jury. Instruction No. 2 given on behalf of the contestants is as follows:

"The court instructs the jury, that in order to make a valid will the law requires that a person shall be of sound and disposing mind and memory, as defined in these instructions; want of testamentary capacity, does not necessarily require, that a person shall be insane, but weakness of intellect, arising from old age, or great bodily infirmity, or suffering, or from all these combined, may render the testator, incapable of making a valid will, when such weakness of intellect disqualifies him, from knowing or appreciating the nature, effect and consequences of the act he is engaged in."

This instruction was argumentative and told the jury what might constitute mental incompetency. The effect of the instruction was to afford the jury a pretext for finding the testator incompetent. It is well known that many times there is a tendency among jurors to seize upon a pretext for finding a verdict in accordance with what they think the testator should have done with his property, and where, as here, distribution is not equal, an instruction of this character affords such pretext. *Noone* v. *Olehy,* 297 Ill. 160; *Freeman* v. *Easly,* 117 id. 317.

The court refused the following instruction offered on behalf of the proponents:

"The court instructs the jury, that to justify a finding that the testator was not of sound mind and memory in the making of a will, the evidence must preponderate in favor of unsoundness of mind and the presumption of sanity must prevail, if the evidence is only sufficient to raise a doubt as to such sanity."

No other instruction fully covered this point. In a will contest, where the proponents have shown the execution of the will and the sanity of the testator by proof, as the statute requires, the burden of proving unsoundness of mind is on the contestants, and the proponents are entitled to the benefit of the legal presumption of sanity. If the evidence on that question is only sufficient to raise a doubt as to the testator's sanity or is equally balanced, such presumption would require the determination of the question in favor of the sanity of the testator. (*Chaney* v. *Baker,* 304 Ill. 362; *Grace* v. *Grace,* 270 id. 558; *Craig* v. *Southard,* 162 id. 209.) It cannot be doubted, in this case, that the proponents in the first instance offered sufficient evidence to sustain the will. Refusal of this instruction was error.

There is another error in this case requiring reversal. The trial court appointed a guardian *ad litem* for both Otto Johnson, insane, and Lester Hudson, a minor. The record

shows that if the will is sustained Johnson will receive less than he would receive if the will be set aside, and Hudson, while receiving nothing in case the will is set aside, is entitled, under the will, to a one-fifth of what remains of the share given to his mother, after her death. The interests of Johnson and Hudson therefore are antagonistic and the same guardian *ad litem* could not properly defend the suit on behalf of both. It also appears from the record that the guardian *ad litem* argued to the jury that the will should be set aside. After the cause had been appealed to this court a motion was filed on behalf of the minor for the appointment of a guardian *ad litem* for him and for leave to file a brief and argument. On that motion the court appointed John T. Kincaid as guardian *ad litem* for the minor in this court and permitted the filing of briefs on his behalf. Such briefs were filed by this guardian *ad litem* showing the antagonistic interests of Hudson as against Johnson and the fact that the guardian *ad litem* appointed in the circuit court argued that the will should be set aside. A guardian *ad litem* is required, when appointed, to examine the case and determine the rights of his ward and to make such defense as the exercise of care and prudence may dictate. When the interests of an infant are called to the attention of the court and the infant himself has been brought into court he becomes the ward of the court, and it is the latter's duty to see that his rights are properly protected. If the general guardian who undertakes the performance of this trust, or a guardian *ad litem*, fails to properly protect the interest of his ward, it is the duty of the court to compel him to do so, or if for any reason he can not act in that capacity he should withdraw and another guardian should be appointed. (*Tymony* v. *Tymony,* 331 Ill. 420; *Rhoads* v. *Rhoads,* 43 id. 239; *Reddick* v. *State Bank,* 27 id. 145; *Sconce* v. *Whitney,* 12 id. 150; *Hitt* v. *Ormsbee,* id. 166; *Enos* v. *Capps,* id. 255.) The interests of the minor, Lester Hudson, were not properly represented

in the trial court, and we cannot pass upon the merits of the case concerning his rights in the present condition of the record. *Linebaugh* v. *Atwater,* 173 Ill. 613.

For the above reasons the decree of the circuit court is reversed and the cause is remanded for a re-trial, with directions to the court to appoint a separate guardian *ad litem* for Lester Hudson.

*Reversed and remanded, with directions.*