(No. 29209.—

LEWIS D. CLARKE, as next friend of Loy Louise Joslyn *et al.*, Appellees, *vs.* CHICAGO TITLE AND TRUST COMPANY *et al.*—(GEORGE R. JOSLYN, Appellant.)

*Opinion filed March 20, 1946—Rehearing denied May 16, 1946.*

HUBBARD, BAKER & RICE, of Chicago, and ERNEST S. GAIL, of Highland Park, (ALVIN GLEN HUBBARD, of Chicago, of counsel,) for appellant.

THOMAS H. FISHER, of Chicago, for appellee Lewis D. Clarke, and CHARLES RALPH JOHNSTON, of Chicago, for appellee Charlotte C. Joslyn.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

The plaintiffs, Joy Louise Joslyn, Jolyon David Joslyn, Mary Alice Joslyn and Theodore Newell Joslyn, are minors, who appear in this suit by Lewis D. Clarke as their next friend. They are the children of the defendants George R. Joslyn and Charlotte C. Joslyn. The property involved herein is located at 616 Center avenue, in the village of Lake Bluff, in Lake county, Illinois. The premises consist of a corner lot which is improved with a fourteen-room two-story frame residence and a separate two-story frame garage building, and a contiguous vacant lot on Scranton street. Since the property here involved is the same property as in the case of *Joslyn* v. *Joslyn,* 386 Ill. 387, and the parties litigant in the present case were also interested in that case, a brief statement of the pertinent facts in connection with the property and the rights and interests therein of any and all members of the Joslyn family, as well as a short history of the previous litigation, must be given

before examining the grounds on which appellant seeks a reversal of the decree of the circuit court of Lake county, appealed from in this case.

The Joslyn family, consisting of appellant, his wife, Charlotte C. Joslyn, and their said children, took up their residence in this property during the fall of 1936, and in the spring of 1938 appellant purchased the property for the sum of $29,000, the title being conveyed by warranty deed to his wife, Charlotte C. Joslyn. Twenty thousand dollars of the purchase price was obtained by a loan on the property, negotiated through the Joslyn Investment Company, the notes evidencing said sum and the trust deed securing the same being signed by Charlotte C. and George R. Joslyn.

June 12, 1938, Joslyn and his wife entered into a written contract, agreeing to live separate and apart, settling their property rights, the custody of the children, and the amount to be paid by the husband to the wife for the support of herself and the children. Paragraphs 4 and 5 of this contract relate to the property here involved, and are as follows:

"4. The real property located at 616 Center Avenue, Lake Bluff, Illinois, title to which is now in the wife, shall remain the sole and exclusive property of the wife, free and clear of any claim on the part of the husband.

In consideration of the foregoing the wife hereby expressly agrees that: (a) She shall not during her lifetime sell or encumber or otherwise dispose of the aforesaid property except with written consent of husband, it being the intent of the parties that this property shall go to the children on death of the wife. (b) That the wife shall make appropriate testamentary disposition so that the aforesaid real property shall pass to the children upon her death, or if the children predecease her, to the husband.

5. The real property located at 616 Center Avenue, Lake Bluff, Illinois, is subject to a $20,000.00 first mortgage which obligation the husband promises and agrees to pay. The husband shall simultaneously with the execution of this Agreement procure a policy of life insurance on his life in the sum of $20,000.00 and shall at all times keep sufficient insurance in force to pay any unpaid portion

of said mortgage. Said policy shall by its terms and provision become payable on his death to the owner and holder of said first mortgage. The purpose of this provision being to assure and guarantee the wife that the real property in question shall be hers ultimately, free and clear of the present encumbrance. Taxes and fire insurance on said real estate shall be paid by wife."

After the execution of this contract, the wife and children continued to reside on the property until sometime during the year 1939. In August, 1939, Charlotte C. Joslyn filed suit for divorce in the superior court of Cook county, and on October 1, 1940, that court entered a decree, granting her a divorce on the ground of desertion, awarding her the custody of the children, and allowing her alimony in the sum of $500 per month for the support of herself and the children.

In the meantime, during the early part of 1940, M. L. Joslyn, as owner of the $20,000 note and trust deed, commenced foreclosure proceedings thereon in the circuit court of Lake county. The nature and contents of the pleadings in that suit, the various controversies therein between the parties thereto, and the final disposition of the same are fully set forth in the decision of this court in *Joslyn* v. *Joslyn*, 386 Ill. 387. In that suit, Charlotte C. Joslyn answered, denying the plaintiff's right to foreclosure. She, also, in her own behalf and as next friend of the four minor children, filed a counterclaim, setting up the contract of June 12, 1938, and alleging that George R. Joslyn was obligated thereunder to pay and discharge said mortgage indebtedness and praying for a decree against him protecting the interests of herself and the minors in the property.

November 28, 1941, a decree was entered dismissing the counterclaim of Charlotte C. Joslyn and her four minor children, finding the amount due to the plaintiff, M. L. Joslyn, upon the notes and trust deed, to be $25,289.15, and ordering foreclosure and sale as prayed in the original complaint. This decree was affirmed by the Appellate

Court. Upon further appeal to this court (386 Ill. 387,) the decree of foreclosure was affirmed, but the dismissal of the counterclaim was reversed. We held in that case that the agreement of June 12, 1938, was a valid existing contract, entered into under seal for a valuable consideration, and remanded the cause to the circuit court. George R. Joslyn thereupon paid and discharged the mortgage lien adjudicated in favor of the mortgagee, and on July 21, 1944, there was a decree entered in the circuit court, which recited that the cause came on for hearing on that day upon the mandate of the Supreme Court, the petition of the counterclaimant, Charlotte C. Joslyn, for fees for her attorneys, and the petition of the guardian *ad litem* for a further allowance of guardian *ad litem* fees. The decree further recited that George R. Joslyn had paid and discharged the mortgage lien, but had failed to pay the court costs assessed in this and the Appellate Court, amounting to the total sum of $827.30. It ordered and decreed that he pay the same in full to Charlotte C. Joslyn. The decree also allowed to her the sum of $1,411.87, as attorney fees for her attorneys, Thomas H. Fisher and Erskine C. Edwards, for services rendered her in the case, as next friend of the minors, and made the same a lien in her favor in the said sum of $1,411.87 upon the remainder interest of the minors in the premises. The decree awarded guardian *ad litem* fees in the sum of $100 to Lewis D. Clarke, and ordered the same paid by the plaintiff, M. L. Joslyn. The decree also ordered, adjudged and decreed that Charlotte C. Joslyn hold and continue to hold the title to said premises under and pursuant to said contract between her and the said George R. Joslyn.

On February 16, 1945, Lewis D. Clarke, as next friend of the four minors for whom he acted as guardian *ad litem* in the foreclosure proceedings, filed the present suit, seeking to have a sale made of the property in question. He made defendants to his complaint Marcellus L. Joslyn,

the plaintiff in the foreclosure suit, Chicago Title and Trust Company, the trustee in the deed of trust foreclosed in the former suit, George R. Joslyn, Charlotte C. Joslyn, and Jasper Nielsen and his wife, the occupants of the property.

The complaint alleged the ownership of the premises by Charlotte C. Joslyn, the making of the contract of June 12, 1938, the foreclosure proceedings in which the same was held by this court to be valid, the payment and satisfaction of the mortgage indebtedness, and the decree of July 21, 1944; that a receiver of the property was appointed in the foreclosure suit on July 1, 1940; that at the time of his appointment the premises were vacant and unoccupied and had been for more than a year; that although the receiver made diligent effort to find a tenant and Charlotte C. Joslyn co-operated with him to that end, no tenant was found and the premises remained vacant until April 18, 1944, when they were rented to the present occupants at a rental of $100 per month; that the receiver was in possession for a period of four years and two months and during that time received as the entire income from the property the sum of only $400, and disbursed for the maintenance thereof, including taxes, insurance and other proper expenses, the sum of $3,568.15, showing a net loss of $3,168.15; that said receiver had filed his report and account showing such loss, which had been approved and he had been discharged by the court; that the necessary improvements on said premises are so costly that the defendant, Charlotte C. Joslyn, and her four minor children cannot afford to occupy the same as their residence and have no intention of doing so in the future; that in view of the difficulty of renting the property, and of the high taxes thereon, the same are liable to waste or depreciation in value, and the sale thereof is necessary for the protection of the parties interested therein.

The complaint further sets up that the four minor plaintiffs make no allegation as to the exact nature or extent of the interests of said minors and Charlotte C. Joslyn in said real estate, or as to the interest of George R. Joslyn therein, if any, but states that all right, title and interest in and to said premises is owned and held by said six persons or some of them, and that any and all conditions and contingencies as to the determination of their relative rights to said premises among themselves will happen and be determined during the lifetime of the survivor of them. Plaintiffs pray that the court will decree the respective rights of the minors and Charlotte C. Joslyn in the premises and also the rights, if any, of George R. Joslyn therein; that a trust be declared of the property; that a trustee be appointed and directed to sell the premises, either at public or private sale, upon such terms and conditions and for such price as the court may authorize and direct; that said trustee be authorized and directed to receive, hold and invest the proceeds thereof, under the direction of the court, for the benefit of the persons entitled, or who may become entitled thereto, according to their respective rights and interests; that the liens against the premises be satisfied out of said proceeds; and that all necessary powers be conferred on such trustee, subject to the continuing jurisdiction of the court, until such times as the respective interests in said proceeds shall be determined by the happening of the conditions and contingencies to which the present title to the real estate is subject or by contractual acts of competent parties.

Charlotte C. Joslyn filed an answer, alleging that she was the sole and exclusive owner and holder of the entire fee-simple title, legal and equitable, to said premises; that the sole right of the children under the agreement of June 12, 1938, was their right to receive the premises upon her death in the event they survived her and she had not dis-

posed of the same during her lifetime; that the frame residence and garage building on the property was in a bad state of disrepair and it would take not less than $2500 to rehabilitate and repair the same; and that neither she nor the children own any property or other assets whatever nor have any funds available to pay for such repairs. She further set up in her answer that, since the commencement of the suit, she had contracted to sell the property to Grant Chamberlain and his wife, and had delivered her warranty deed to the property in escrow to the Chicago Title and Trust Company. She attached to her answer as exhibits copies of the contract of sale and the escrow instructions, from which it appears that the consideration for the sale was $18,000; that out of the proceeds of such sale a broker's commission of 5 per cent was to be paid to Van W. Burris, of Lake Bluff, Illinois, and that the sale was conditional upon its approval by the court in the present action and was only to be consummated in the event that it was so approved.

A counterclaim was also filed by Charlotte C. Joslyn against George R. Joslyn in which she set up that said defendant either had or claimed an interest in the property, or in the proceeds of any sale thereof, and asked the court to determine whether he, in fact, has any such interest, and that such interest, if any there be, shall be decreed to be subject to her rights under the decree of July 21, 1944. A reply to her answer was filed by plaintiffs, denying that the sole rights of the minors in the property were as she had alleged in her answer and denying that their sole rights in the proceeds of sale could be properly determined on an actuarial basis as though Charlotte C. Joslyn was the owner of a life estate and the minors entitled to the remainder. Attached to the reply as an exhibit is a copy of a letter from Pickus Construction & Equipment Company, general contractors, showing the con-

dition of the house and garage, and estimating the cost of repairing and rehabilitating the same at $3060.

George R. Joslyn answered the complaint, attacking the right of Lewis D. Clarke to act in the suit as next friend of the minors, and alleging that the suit was not brought to protect their interest, but that Clarke, in filing the suit, was acting in confederation with Thomas Hart Fisher and Charlotte C. Joslyn, whose interests in the proceeding, he alleges, are antagonistic to the interests of the children. He denied the necessity of a sale, denied the premises were not a proper home for the children and their mother, and alleged that Charlotte C. Joslyn was obligated, under the terms of the contract of June 12, 1938, to retain the same as a home for the children. He also filed a counterclaim, in which he purported to appear as counterclaimant both on behalf of himself and said minor children, and to which Charlotte C. Joslyn and Thomas Hart Fisher were made parties defendant. This counterclaim reiterates and expands the charges and allegations contained in his answer. It alleges that Lewis D. Clarke, who sues as next friend of the minors, and Thomas Hart Fisher, his attorney, are conspiring with Charlotte C. Joslyn to defeat the rights of the minors in the property, and that the suit was filed for the purpose of depriving the children of all interest in the funds from the sale of the real estate and obtaining all of such funds for the use and benefit of Charlotte C. Joslyn. He attacks the validity of the decree of July 21, 1944, entered in the foreclosure case, alleging it was obtained by fraud and in violation of the rights of the minors. The prayer of his counterclaim is that the provision of said last-mentioned decree attaching a lien upon the interests of the minor children in said property shall be declared null and void; that Thomas Hart Fisher be enjoined from prosecuting in the United States District Court, for the Northern District of Illinois, Eastern Division, a certain bank-

ruptcy proceeding, entitled George R. Joslyn, bankrupt No. 62732, the details of which bankruptcy proceeding and Fisher's connection therewith are set out at length in the counterclaim; and also asks that, in the event of a sale of the property, a disinterested person be appointed as trustee to hold the proceeds of said sale in trust for the benefit of the minor children.

The hearing of the evidence was had on June 7 and 9, 1945, and on the 18th day of the same month a decree was entered finding that it was to the best interests of the defendant Charlotte C. Joslyn and said four minor children that the property be sold immediately and during her lifetime, and that the sale thereof was necessary for the conservation, preservation and protection of said premises and of the interests of the parties therein, and ordering that the property be sold at public auction, at the time and in the manner and upon the notice and terms specified in the decree. This was the only issue adjudicated by the decree, which decree expressly provides that all issues upon the counterclaims were reserved for further adjudication therein. The decree further provides that no sale shall be valid until approved and confirmed by the court and directs that upon approval and consummation of such sale, the net proceeds thereof shall be paid to the clerk of the Lake county circuit court to be thereafter held and disbursed by him subject to the further order of said court. From this decree a direct appeal has been taken to this court, a freehold being involved.

The complaint in this case clearly states a cause of action cognizable in a court of equity and seeks relief which, under section 50 of the Chancery Act, (Ill. Rev. Stat. 1945, chap. 22, par. 50,) is within the jurisdiction of the court to grant. Under that section, since the enlargement of the scope of the section by amendment in 1929, a court of equity will order a sale of real estate for the purpose of reinvestment for the benefit of contingent

future remaindermen when it is made to appear that the property is liable to waste or depreciation in value or that such action is necessary for the preservation or protection of any contingent future interest therein. However, independent of section 50, and long prior to 1929, this court held that equity, under such circumstances, had full jurisdiction and power to meet the emergency by directing a sale of the property and reinvestment of the proceeds. (*Gavin* v. *Curtin*, 171 Ill. 640; *Thompson* v. *Adams*, 205 Ill. 552.) Courts of equity have plenary jurisdiction over the persons and estates of infants, and in exercising that jurisdiction may cause to be done whatever may be necessary to preserve their estates and protect their interests. *VanEpps* v. *Arbuckle*, 332 Ill. 551; *Fienhold* v. *Babcock*, 275 Ill. 282.

It was conclusively established and admitted by appellant, when testifying before the court, that the property is not a proper and suitable home for Charlotte C. Joslyn and the children, and that it does not produce income sufficient to pay the taxes, insurance and necessary repairs. A witness, in the construction and general contracting business, testified that he had made a careful examination of the property; that it was in a bad state of disrepair; that he had made an itemized statement of the various repairs necessary and an estimate of their cost, and that the total cost of the necessary repairs amounted to the sum of $3060.

It is not seriously contended by appellant that it is not for the best interests of those persons or the person in whom the future contingent remainder will vest that the property be sold, or that such sale is not necessary for the protection of the interests of the minors therein. The undisputed facts established by the evidence and admitted by appellant bring this case clearly within the provisions of the statute above set out. The court not only had the power to order the sale of the property, but would have been remiss in its duty had it failed to do so. The sale

ordered was widely advertised, pursuant to the directions of the decree, and the bidding thereat was spirited. We are satisfied that the rights and interests of the minors were not prejudiced by the decree, but, on the contrary, their rights were protected and their interests promoted thereby.

In view of the foregoing, it will not be necessary for us to consider the questions raised by appellant as to whether Lewis D. Clarke is a proper person to appear in the cause as next friend of the minors and whether Thomas Hart Fisher is a proper person to appear as attorney for said minors. Courts of equity have from earliest times regarded infants as their special wards. (1 Blackstone 427.) This guardianship has never been repudiated, but has continued and still exists. (*Swiney* v. *Womack,* 343 Ill. 278.) In all cases where the jurisdiction of a court of equity is invoked on behalf of infants or where their rights are drawn in litigation in such court, either as plaintiff or defendant, the infant is treated as a ward of the court and under its special protection; and the court on its own motion will grant him any and all relief to which he may be entitled and will notice any and all legitimate defenses existing in his favor, although the person acting as his representative in the proceedings may neglect to claim such relief or advance such on his behalf. (*McReynolds* v. *Miller,* 372 Ill. 151; *Mason* v. *Truitt,* 257 Ill. 18.) While the cited decisions refer to guardians *ad litem,* the rule applies with equal force to next friends. The functions and powers of a next friend are in the nature of those of a guardian *ad litem,* the chief, if not the only, difference between them being that the latter represents an infant defendant and the former an infant plaintiff. Both are considered as agents or officers of the court, appointed either theoretically or in fact by the court, 'to represent the interest of the infant in the litigation. (43 C.J.S., Infants No. 207.) It is a generally accepted

rule that there should be no conflicting interests between the infant and the party representing him. *Millage* v. *Noble,* 334 Ill. 315; *Linebaugh* v. *Atwater,* 173 Ill. 613; *Roodhouse* v. *Roodhouse,* 132 Ill. 360.

The existence of adverse interests likely to raise antagonism or opposite purposes in the course of judicial proceedings is sufficient ground to disqualify a person from acting as next friend of an infant or otherwise participating in such proceedings on the infant's behalf. We have, therefore, carefully and thoroughly considered the matter and examined the record to determine whether the protection of the minors' interests requires that the decree appealed from be reversed or that the cause be remanded for any purpose, and we are convinced that the decree protects and promotes their interests, and that no useful purpose would be served by remanding the cause for the entry of another and different order of sale, or for further investigation as to the advisability and necessity of selling the property. The decree appealed from adjudicates none of the issues raised by the counterclaims and makes no determination of the rights of any of the parties in the proceeds of the sale, and no order as to the disposition of such proceeds. These matters were reserved for future consideration and adjudication. And if, in connection with such matters, Lewis D. Clarke or Thomas Hart Fisher are, for any reason, unsuitable persons to represent the interests of the infants, the court has the power, and also the duty, to remove them as such next friend and attorney, respectively, and appoint other proper persons in their stead. *Ames* v. *Ames,* 151 Ill. 280.

There are some minor contentions which we deem it necessary to note briefly. It is insisted that it was error for the court to order the property sold at auction without first requiring the cancellation of the contract made by Charlotte C. Joslyn to sell the same to Grant Chamberlain and wife and also the cancellation of her warranty deed to

them for the property, which contract and deed appellant contends constitute a cloud upon the title. As appears from the record and as set out in the findings in the decree, the sale by Mrs. Joslyn to the Chamberlains was conditioned upon and subject to the approval of the Lake county circuit court in the cause in which the decree now appealed from was entered. Her warranty deed was delivered in escrow to the Chicago Title and Trust Company; to be delivered only upon such approval. Since the proposed sale to the Chamberlains was disapproved by the court in favor of a sale at auction, it thereby became, according to the terms of the sale, null and void. It was thereupon the duty of the escrowee to return the deed to Mrs. Joslyn, and this, no doubt, has been done. No bidder at the sale could have been misled into believing, as appellant contends, that the tentative sale to the Chamberlains, or the conditional delivery of the deed to them, constituted a cloud upon the title to the property.

Appellant also insists that it was error for the court to decree that the sums paid for taxes should be refunded to Charlotte C. Joslyn and to order a commission paid to Van W. Burris. The decree neither provides for nor authorizes payment of any sums to either Charlotte C. Joslyn or Van W. Burris. Van W. Burris was the broker representing the Chamberlains in their negotiations for the purchase of the property. The escrow instructions in connection with that sale provided for the payment to Burris of a broker's commission of 5 per cent and, also, provided for the payment to Charlotte C. Joslyn of certain sums on account of taxes, both to be paid out of the proceeds of that sale. The court, however, did not approve that sale, but ordered a sale at public auction. This terminated the escrow agreement. In this the court was correct. However, the court erred in authorizing, out of the proceeds of the auction sale, the payment of a real estate broker's commission of 5 per cent of the sale price. Sales at public auction

should be made to the highest and best bidder without commissions to brokers. This being so, it necessarily follows the sale notice containing this provision was improper.

We are further of the opinion the court should have directed the master to make the sale and not the clerk. The decree should also provide that, on the approval of the sale by the court, the master, after paying the expense of the sale, turn over the net proceeds to the clerk of the court to be thereafter held and disbursed as directed by the court.

The decree, therefore, is reversed and remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*