*In re* MARRIAGE OF VICKI OMELSON, a/k/a Vicki Nichols, Petitioner, and ROBERT G. OMELSON, Respondent-Appellant.—(Lori Omelson, by Vicki Omelson, her Mother and Next Friend, Petitioner-Appellee.)

Fifth District   No. 82—45

Opinion filed February 18, 1983.

HARRISON, P.J., specially concurring.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellant.

Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellee.

JUSTICE JONES delivered the opinion of the court:

Respondent father appeals from an order of the trial court which granted a petition to change the surname of his minor daughter to that of the new husband of his ex-wife, the mother of his child. We reverse.

The respondent, Robert G. Omelson (father), and Vicki Omelson (mother) were married on May 5, 1972, in St. Clair. One child, Lori, the petitioner, was born of the marriage on May 6, 1975. A judgment of dissolution of marriage was granted to the mother in St. Clair County on February 5, 1980. The judgment of dissolution granted custody of Lori to the mother and conferred visitation rights upon the father, including every weekend from 5 p.m. Friday to 10 p.m. Sunday, certain holidays and four weeks during the summer months. The judgment directed the father to pay $35 per week for support of the child.

The mother married Michael Nichols on June 7, 1980, four months following the dissolution. The father remarried in April 1981. Following her remarriage, the mother and Lori became residents of Collinsville in Madison County. On July 21, 1980, the child, Lori Anne Omelson, by her mother as next friend, filed a petition in the circuit court of Madison County for an order changing her surname to Nichols. At the time this petition was filed, Lori Anne was barely five years old and had resided in the Nichols' home about seven weeks. As required by the applicable statute (Ill. Rev. Stat. 1979, ch. 96, par. 3), notice of the filing of the application for change of name was given by publication. The father was then living and working in Joliet, Illinois, and he learned of the name-change petition from a friend who had seen the publication notice. The father first filed an answer and an affirmative defense in the Madison County proceeding. Two weeks later, in the same St. Clair County case in which the parties had been granted a dissolution of their marriage, the father obtained an order of permanent injunction which restrained the mother "from proceeding with her Petition for Change of Name in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, in Case No. 80-MR-214 until the further order of this Court." The order of permanent injunction was entered on September 11, 1980.

On September 28, 1981, the daughter, Lori Omelson, by her mother and next friend, filed a second petition for change of her surname to Nichols. The second petition was filed in the same St. Clair County case in which her parents had obtained a dissolution of their marriage and in which the injunction against the Madison County name-change proceeding was obtained. Lori's petition alleged, in its substantive part, that she had "incorporated" into the Nichols household after her mother's marriage, that upon commencing school she has chosen to use the surname of Nichols and that it is in her best interest that her surname be changed to Nichols. Accompanying Lori's petition for change of name was a petition for the mother for an injunction against the father which prayed that he be enjoined from appearing at Lori's school, communicating with Lori's school, disrupting Lori's education, attempting to exercise his right of visitation without the required advance notice and removing Lori from the State of Illinois.

The father filed a response to the petition for change of name in which he answered both the petition for change of name and the mother's petition for injunction. He asserted, in substance, that he wanted his daughter to continue the use of Omelson as her surname, that it was not in the best interest of Lori that her surname be

changed to Nichols and that the mother had been guilty of wilful and contumacious conduct in interfering with and denying him his rights of visitation. The father's response ended with a prayer that the petition for change of name be denied and that the mother be held in contempt of court. Hearing was held, followed by a judgment entered November 9, 1981, in which the court found that "it is in the best interest of the parties' minor child that her surname be changed to Nichols; that Vicki Nichols has frustrated respondent's attempt to exercise his right of visitation with said minor child and is in contempt of court." The dispositional portion of the judgment (1) changed the name of the child to Lori Nichols and (2) sentenced the mother to two weeks in jail but stayed the jail sentence indefinitely with the proviso that the contempt would be purged by compliance with the terms of visitation until the child reaches the age of 18 years. Post-trial motions were denied, and the father appeals that portion of the judgment which granted the change in the surname of the child.

This case is one of first impression in Illinois for we find no case in which the issue here has been directly presented. However, the issue has been alluded to in three cases. In *Solomon v. Solomon* (1955), 5 Ill. App. 2d 297, 125 N.E.2d 675, the court held that the matter of a change of name of a minor child of divorced parents is a matter incidental to the custody of the child and that the court which had jurisdiction of the divorce under the Divorce Act (not cited, but probably Ill. Rev. Stat. 1953, ch. 40, par. 1 *et seq.*) could entertain a petition for injunction to enjoin the custodial parent from instituting any proceeding to change the name of a minor child of the parties. The court observed:

> "In determining whether or not any restraint should be put upon plaintiff's action in aiding the minor child to change his name, of course the first and most important consideration before the trial court should be the welfare of the child. The matter is within the discretion of the court. The question of the propriety of the trial court's order is not before us and upon it we express no opinion." (5 Ill. App. 2d 297, 301-02, 125 N.E.2d 675, 678.)

In *Lawrence v. Lawrence* (1980), 86 Ill. App. 3d 810, 408 N.E.2d 330, the court considered an appeal from the denial of a petition of a divorced mother for a finding that her ex-husband was not the father of a minor child born during wedlock. Part of the case before the trial court included a change of name of the minor obtained in a separate proceeding brought by the mother without the knowledge of her ex-husband. The trial court entered an order which held that the mother

was estopped from challenging the paternity of the minor and directed the mother to change the minor's name back to that of her ex-husband. In affirming, the court gave full credence to the statement in the *Solomon* case that the most important consideration in a proceeding to procure a change of name for a minor is the best interest of the child. In *Weinert v. Weinert* (1982), 105 Ill. App. 3d 56, 433 N.E.2d 1158, the court considered an appeal from an order which dismissed, without an evidentiary hearing, a petition to modify a divorce decree. The basis of the ex-husband's petition was that there had been a change in the financial condition of both parties and that the ex-wife had remarried and was using the surname of her present husband as the surname of his children, who were in the custody of the ex-wife. The appellate court reversed and remanded for an evidentiary hearing, stating with regard to the name change:

"Petitioner's further allegations that the children refused to visit with and acknowledge petitioner as their father, and the unfortunate possibility respondent may have interfered with petitioner's visitation rights so to keep the children and her new husband as a family unit to the exclusion of petitioner, may also establish substantial changes in circumstances warranting modification of petitioner's obligation. * * *

We turn finally to the matter of the use by the children of their stepfather's surname. Respondent argues the children have a common law right to take any name they may choose, citing *Reinken v. Reinken* (1933), 351 Ill. 409, 184 N.E. 639. However, the court there noted this right is not absolute and must not interfere with the rights of others (351 Ill. 409, 413, 184 N.E. 639, 640). The interest of petitioner that his sons bear his surname would appear to qualify their right to use their stepfather's surname where the latter has not adopted them and is not legally burdened with an obligation of support. (See *Solomon v. Solomon* (1955), 5 Ill. App. 2d 297, 125 N.E.2d 675; *Hall v. Hall* (1976), 30 Md. App. 214, 351 A.2d 917.) * * * While the trial court did find that the interests of the children would best be served by allowing them to use the stepfather's surname as they have for the past few years, that determination should be reached only after a hearing where evidence, rather than allegations, can be adduced by both parties. [Citations.] We do not intend by our comments to suggest that conclusion should be reached by the trial judge after a hearing." 105 Ill. App. 3d 56, 60, 433 N.E.2d 1158, 1160-61.

There is no lack of cases from other jurisdictions that have consid-

ered the issue presented. The common thread that runs through these cases is that the best interest of the child must govern a determination whether or not to grant a change of name. (*E.g., Sobel v. Sobel* (1957), 46 N. J. Super. 284, 134 A.2d 598; *Degerberg v. McCormick* (1963), 41 Del. Ch. 46, 187 A.2d 436; *West v. Wright* (1971), 263 Md. 297, 283 A.2d 401; see Annot., "Rights and remedies of parents inter se with respect to the names of their children," 53 A.L.R.2d 914 (1957).) Since the above-cited Illinois cases assert the same principle, it is the criterion by which this case must be decided. To state the issue briefly, is it in the best interest of Lori Omelson that her surname be changed to Nichols?

The contexts in which the cases have considered whether the best interest of a child will be served by granting a change of name vary widely. Cases involve children who have been abandoned, abused, sexually molested, fathered by one convicted of a heinous or notorious crime, born out of wedlock, and so forth. In such instances it is almost always held that a child's best interest would be served by granting a change of name. See *West v. Wright.*

We consider in this case, however, the more ordinary circumstance of a dispute involving divorced parents, both of whom have remarried and established separate households. Both parents love the child and both want the best for her. The father is current in his support payments and exercises his right of visitation with reasonable frequency, in view of the fact that he is now a resident of Crown Point, Indiana. The father very much wants Lori to continue to bear his surname. The mother had custody and is charged with the day-to-day guidance, care and nurture of the child. The mother's new husband has children by another marriage who occupy the same household and bear his surname of Nichols. The mother determined that Lori would be spared embarrassment, annoyance, derision and ridicule by her peers and would share a deeper sense of belonging to the newly cast family if her name were changed to Nichols. Thus this proceeding. The background described has presented itself with some frequency in the cases, and from them general rules and guidelines have evolved which present what we feel is a well-reasoned majority rule.

Initially we would comment that although the petition for change of name is brought in the name of Lori, she is of such tender years that she could have no independent judgment in the matter and would be wholly subject to the suggestion and desire of her mother. Accordingly, we regard the proceeding as instituted and prosecuted by the mother. (*Degerberg v. McCormick; Lazow v. Lazow* (Fla. App. 1962), 147 So. 2d 12; *Mark v. Kahn* (1956), 333 Mass. 517, 131 N.E.2d 758.)

Thus, further questions arise: whether the mother seeks to advance her own interest in bringing the petition and whether the mother's interest is also in the best interest of the child? Although the interests of mother and child will frequently coincide, they can frequently diverge. It is a generally accepted rule that there should be no conflicting interests between the infant and the party representing him. (*Clarke v. Chicago Title & Trust Co.* (1946), 393 Ill. 419, 66 N.E.2d 378; *Millage v. Noble* (1929), 334 Ill. 315, 166 N.E. 50.) The situation could present a conflict of interest and care must be taken, especially where the minor is of tender years, to assure that some purpose of the custodial parent does not taint the determination of the child's best interest. For instance, the mother may be prompted to petition for a name change in order to punish the ex-husband and father, to prove her enduring devotion to her new husband, to show her new husband that all ties to her former marriage are broken, to present to the community a facade of a unitary family, or to hide the fact that the mother had previously been through a divorce. Some credence for the last is found in a news account of the mother's remarriage which is in evidence. It gave the mother's maiden name and the name of the bride as Victoria Saul, although that name had not been restored to her in the dissolution judgment. The same news item stated that Lori Anne Nichols served as flower girl but made no mention of the fact that Lori Anne was the daughter of the bride. The announcement was that of a marriage in a church on June 6, 1981. The mother had married Nichols in a civil ceremony on June 7, 1980. The judgment was entered changing Lori's surname to Nichols on November 9, 1981. Such machinations serve to render suspect the mother's motives in seeking a change of name for Lori. Admittedly, none of these possible motives are necessarily suggested by the evidence, and we neither presume nor infer them. Nevertheless, in determining whether the change of name is in the best interest of child, it is well to consider whether the interests of others are sought to be served by the proceeding.

The "right" of a father to have his children bear his surname has not gone without attention in the change of name cases. The California case of *In re Marriage of Schiffman* (1980), 28 Cal. 3d 640, 643, 620 P.2d 579, 581, 169 Cal. Rptr. 918, 920, notes that surnames have been used at least since the Norman Conquest and discusses the historical background and rationale for the custom which assigns the surname of the father to his children. The notion that a natural father has a right to have his children bear his surname receives scant credence in the more recent cases dealing with the subject. Rather, such

issues are considered more in the light of the best interest of the children rather than with regard to some right of the father. A discussion of the father's "right" to have his children bear his surname is found in the New Jersey case of *In re Application of Lone* (1975), 134 N.J. Super. 213, 220, 338 A.2d 883, 887, where the court stated:

"To [the] extent that the paternal 'right' represents a recognition of a father's interest in perpetuating his own name or in protecting his ego or in preserving his perceived male prerogatives, it may have little or no relevance to the best interests of the child or the propriety of a name change. But to the extent the 'right' recognizes the father's interest in maintaining his relationship with his child for their mutual benefit, it becomes highly relevant.

Cases in other jurisdictions have expressed the father's 'right' in just such terms. In Degerberg v. McCormick, *supra,* the court noted that authority 'recognizes that a change of surname of a child of divorced parents may contribute to estrangement of the child from his father', relying in part upon psychiatric testimony presented to that court that an attempted change of name 'created a "wedge" ' in the child's relationship with his father, and that his continued use of the stepfather's name 'will have a serious, adverse effect upon the child's development in his formative years.' Similarly in Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908 (Sup. Jud. Ct. 1956), the court expressed the view that

The bond between a father and his children in circumstances like the present is tenuous at best and if their name is changed that bond may be weakened if not destroyed. *** A change of name may not be in the child's best interest if the effect of such change is to contribute to the further estrangement of the child from a father who exhibits a desire to preserve the parental relationship. [131 N.E.2d 758, 762.]

And in Robinson v. Hansel, Minn., 223 N.W.2d 138 (Sup. Ct. 1974), the same considerations were stated in the following language:

*** courts have traditionally tried to maintain and to encourage continuing parental relationships. The link between a father and child in circumstances such as these is uncertain at best, and a change of name could further weaken, if not sever, such a bond. [223 N.W.2d 138, 140]."

We turn to the evidence in this case. In her testimony the mother gave as reasons for the name change Lori's wish for such, the proba-

bility of stigma from living in a household where everyone but she would have the surname of Nichols, and the adverse peer pressure that would result from Lori's attendance at a small Catholic school where the divorce by her parents would be apparent because of the difference in names. The mother presented no evidence to suggest that the father had abandoned Lori, that there was a lack of interest in her on the part of the father, or that the father had been guilty of any misconduct toward Lori or others.

The facts presented are very close to those in *In re Application of Lone*. There, the mother advanced three reasons why the change of name of the child should be granted; first, that to require him to live with a name different from his mother and brother would be to ask this child to carry a burden through his formative years that could very well have highly negative psychological implications; second, that Lone had abandoned his child; and third, that bureaucratic red tape would create chaos if formal recognition was not given to a name which the child might use informally. The court summarily dealt with the second and third reasons. As to the first reason, the court found that it implied essentially that growing up in the Dec family as the only Lone would set the child apart, at least in his own mind, and that among his peers his name would create confusion and embarrassment for him. In essence, that is the argument of the mother here. In language appropriate to the case under consideration and, we think, expressive of a great majority of the cases of similar context, the court in the *Lone* case disposed of the foregoing argument as follows:

> "Whether using language of paternal 'right' or these more relevant terms relating to the child's well-being, the cases of other jurisdictions almost uniformly have rejected contentions that a child's psychological health requires that his name conform to that adopted by his mother on remarriage. See, *e.g., Degerberg v. McCormick, supra; Mark v. Kahn, supra; Robinson v. Hansel, supra; West v. Wright, supra; Application of Trower, supra; Application of Shipley, supra; Application of Hinrichs, supra; Marshall v. Marshall*, 230 Miss. 719, 93 So. 2d 822 (Sup. Ct. 1951); *Reed v. Reed*, 338 P.2d 350 (Okla. Sup. Ct. 1959); *contra, Newman v. King, supra; In re Adoption of McCoy*, 31 Ohio Misc. 195, 60 Ohio Op. 2d 356, 287 N.E.2d 833 (C.C.P. 1972).

> The apprehensions which reasonably arise as to the possible effects of a name change, like the contrary apprehensions expressed by plaintiff, are persuasive and serious. A change of name imposed upon a child could represent to him a rejection

by his father; or evidence that his father is deserving of rejection or contempt; or an attempt by his mother to deceive him as to his true identity; or a statement by his mother and stepfather that his true identity is a shame and embarrassment to them and others. Such consequences could be enormously harmful to the child. They are, of course, conjectural, but no less so than are the 'psychological implications' foreseen by plaintiff.

The record thus generates only two conflicting groups of speculations as to the possible effects of a name change. No expert testimony has been offered, and no academic literature has been found, to assist in the weighing of these speculations. The realities are that the child's present name represents his identity, his paternity and a remaining bond with his father. There is no sound basis to conclude that any tampering with these realities would advance the best interests of the child." (*In re Application of Lone* (1975), 134 N.J. Super. 213, 220-21, 338 A.2d 883, 887-88.)

Not cited in *Lone* but to the same effect is *Lazow v. Lazow* (Fla. App. 1962), 147 So. 2d 12, 14, where the court stated:

"To change the name of a minor son so that he no longer bears his father's name is a serious matter, and such action may be taken only where the record affirmatively shows that such change is required for the welfare of the minor. Society has a strong interest in the preservation of the parental relationship, Application of Shipley, 26 Misc. 2d 204, 205 N.Y.S.2d 581 (1960); Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908, and a possible adverse effect on the relationship between father and child is a valid ground for refusing to change the name of a 12 year old child. At this tender age a child is not capable of making an intelligent choice in the matter of his name. See Mark v. Kahn, supra; In re Epstein, 121 Misc. 151, 200 N.Y.S. 897 (1923)."

As pointed out in *Robinson v. Hansel*, cited in the *Lone* case, "Whatever the nature of the 'harassment' of the children by their peers, it would seem that it was in this case surely no more severe than [that] faced by thousands of other similarly situated children in a day when broken homes have become commonplace." (*Robinson v. Hansel* (1974), 302 Minn. 34, 37, 223 N.W.2d 138, 141.) This, too, is particularly appropriate here where the mother fears peer harassment at Lori's small Catholic school. We note, however, that the mother's fear rises no higher than apprehension; there is no evidence.

The mother's new husband, Michael Nichols, is not required to support Lori and has no legal responsibility toward her. Even if the change of name is granted Lori, her father must continue to support and educate her, extending through college. (Ill. Rev. Stat. 1979, ch. 40, par. 513; *Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77.) The father would continue to have rights of visitation with Lori, including four weeks during the summer. What of her "embarrassment" before her peers when she visits with a father whose name differs from hers? What of Lori's new name if her mother's second marriage is ended by divorce and she marries again? And in the event of the mother's untimely death, custody of Lori would probably revert to her father.

In view of the record before us, which shows a father who maintains an active interest in his daughter, loves her, continues to support her and has committed no wrong toward her, the granting of a name change to Lori would further no purpose other than that of a temporary, and superficial, expedient. The majority rule as expressed in the *Lone* case must be applied. The best interest of Lori will be served in this case by denying the change of name, awaiting her maturity and leaving the decision whether to change her name to her at a time when she will be aided by her own desires and perceptions.

Reversed.

KASSERMAN, J., concurs.

HARRISON, P.J., specially concurring:
While I concur in the result reached in the majority opinion, I cannot concur in the discussion of possible motives of the mother which, as admitted by majority, are not necessarily suggested by the evidence. Nor can I concur in the conjecture regarding the mother's possible remarriage. These dicta are totally irrelevant to the resolution of the controlling issue in the case, which was properly decided by application of the best interest of the child standard.