NORMAN ALAN STATHAM, Plaintiff-Appellant, v. KAREN DOMYAN et al., Defendants-Appellees.

Fifth District   No. 5—85—0534

Opinion filed March 16, 1987.

William D. Stiehl, Jr., of Stiehl & Stiehl, of Belleville, for appellant.

Roger L. Vetter and John A. Vassen, both of Vassen, Vetter & Meives, of Belleville, for appellee.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, Norman Alan Statham, appeals an order of the trial court that granted in part, but also denied in part, his petition for an injunction to restrain defendant, Karen Domyan, from using the name Domyan as the surname of their son, Mark Alan Statham. Appeal is also taken from that portion of the same order that denied Norman's request for extended visitation with Mark. We affirm.

The child, Mark Alan, was born on July 19, 1972. The parents, the parties to this action, were not then, and never have been, married, although at the time of the birth they were living together. Approximately five months after the child was born, defendant left, taking Mark, and moved in with her mother. Sometime in 1973 Karen, again taking Mark, then about one year old, began living with Robert Domyan. In March 1974 defendant and Domyan were married.

Plaintiff's visitation with Mark prior to 1977 was only occasional and apparently was discouraged by defendant. In 1977 plaintiff filed suit to have himself declared to be the father of Mark and to obtain

visitation rights. Pursuant to stipulation of the parties, an order was entered on February 9, 1977, declaring plaintiff's paternity and fixing visitation on alternate Saturdays between 10 a.m. and 5 p.m. After this order plaintiff complained that visitation rights were being denied him, and he filed a petition for a rule upon defendant to show cause why she should not be held in contempt of court. In January 1978 an order was entered that directed defendant to encourage Mark to make the visitations with plaintiff.

In 1977 defendant enrolled Mark in kindergarten at Bluff View School under the surname of Domyan. When plaintiff learned of this he went to the school with a copy of Mark's birth certificate and had his name changed to Statham. Even so, it appears that Mark continued to use the name Domyan with his friends and in all unofficial relationships. After the third grade, defendant transferred Mark to another school and again enrolled him with the surname of Domyan.

In 1979 plaintiff was arrested and prosecuted for the shooting of another at the VFW hall in East St. Louis. As a result of his conviction for this incident, plaintiff went to prison in September 1980 for 15 months. Despite his requests, defendant refused to take Mark to the prison to visit plaintiff. According to defendant, plaintiff had no visitation with Mark from December 1979 until July 1984. Plaintiff testified that after his release from prison, he attempted to renew visitation by telephoning and sending letters to defendant, but to no avail. In April 1983 plaintiff filed another petition for a rule upon defendant to show cause why she should not be held in contempt for denying visitation and a petition seeking enlargement of visitation rights. Defendant filed a counterpetition for increased support payments from plaintiff and for a judgment upon plaintiff's arrearages. Following a hearing, the court entered an order on July 25, 1984, that increased support payments to $45 per week and granted judgment against plaintiff for $4,925 for support arrearages, payable at the rate of $12.50 per week. The order also provided in detail for plaintiff's visitation with Mark on alternate Saturdays, with directions that plaintiff was to take Mark to any of his organizational activities that should coincide with the visitation periods.

On October 17, 1984, plaintiff filed a petition for an injunction. It alleged that plaintiff is the father of Mark, that Mark's birth certificate shows plaintiff as his father, that plaintiff is regularly paying child support for Mark and is making regular payments upon the arrearage. It further alleged that Robert Domyan has never adopted Mark and that defendant, Mark's mother, has used and continues to use the surname of Domyan upon all official documents and records

pertaining to Mark. The prayer of the petition was for an injunction to issue against defendant restraining her from changing Mark's surname to Domyan in any official records, including school, medical, or hospital records or membership applications, and further ordering defendant to cause any existing official records to be changed to reflect Mark's surname to be Statham.

The trial court conducted a thorough hearing on the petition for an injunction as well as another petition for a rule upon defendant to show cause why she should not be held in contempt of court for denying plaintiff his rights of visitation. Mark was 12½ years old at the time and was interviewed in chambers by the court in the presence of the attorneys for both parties. At the hearing the plaintiff testified that he was living in Caseyville with a woman to whom he was not married. He related his attempts at visitation from the time of Mark's birth and his petitions for court help in obtaining visitation privileges. He stated that he was currently exercising his visitation rights with Mark on a regular basis and that he took Mark to various activities, including horseback riding, barbecues, ball games, Six Flags, and any other places Mark wanted to go. He stated he got along very well with Mark and was anxious to establish and maintain the father-son relationship. He also stated that he was current in paying the court-ordered child support and in paying on the judgment for the arrearage. He admitted that he had had Mark in the VFW with him on the night in 1979 that he had shot another man. He also admitted that since 1981 Mark has not referred to him as "Dad," although previous to that time he had done so.

Defendant testified to the irregularity of plaintiff's visitation with Mark prior to July 1984. Since then, however, she agreed that the visitations have gone fine and that plaintiff was exercising his visitation privileges regularly. Defendant further testified that other than the birth certificate and the enrollment at Bluff school, Mark has always gone by the name of Domyan. Mark is known as Mark Domyan on his physical education records, book rental records, school term papers, school records, medical and dental records, church records, insurance records, among the members of the Domyan family, and in the Boy Scouts. He has never known any other name than Domyan.

At the interview in chambers, which was made a part of the transcript, Mark indicated that he knew that plaintiff was his father. He related that he had missed some of his activities due to visitation with the plaintiff. When the court asked Mark whether he wanted more time to visit with plaintiff, he replied, "Not more time, I don't think so." He told the court that he preferred for his mother to take him to

recreational events because he feels more comfortable with her. He stated that his friends called him Mark Domyan and it would "create a problem" if he went by any other name. When the court asked him what Mark called the plaintiff when he was with him Mark replied, "I don't call him Dad at all." When asked why, he replied, "Well, Rob, I call him Dad, and that's who I consider."

On June 21, 1985, the court entered an order in which it granted the petition for injunction in part and denied it in part. The pertinent part of the order relating to the injunction stated:

> "Court grants Petition for Injunction to the extent that defendant is restrained and enjoined from initiating legal proceedings to legally change the name of the child to Mark Domyan. Petition for injunction is denied in all other respects and Defendant is not enjoined from enrolling the child in school under the name Domyan or from using the name Domyan in official records or from calling the child Mark Domyan."

The same order granted plaintiff extended visitation for an extra two hours on alternate Saturdays but

> "denied plaintiff's request for more extended visitation because the plaintiff is living with a member of the opposite sex to whom he is not married and because the court finds that the Plaintiff and Mark have not become sufficiently acquainted. For these two reasons extended visitation is not in the child's best interest at this time."

On appeal both parties rely upon the cases of *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 465 N.E.2d 85, and *In re Marriage of Omelson* (1983), 112 Ill. App. 3d 725, 445 N.E.2d 951, where it was held that a change in a minor's surname shall be allowed only when the court finds that the change is in the best interest of the minor. In the *Presson* case the supreme court discussed the factors that a court should weigh in determining whether a change in surname would be in a child's best interest:

> "To determine the best interest of the child, the court should consider the expressed wishes of the child and of both parents, the stated reasons for the proposed change, the child's age and maturity, the nature of the family situation, the strength of the tie between the child and each parent, any misconduct toward or neglect of the child by the parent opposing the change, and the name by which the child has customarily been called." *In re Marriage of Presson* (1984), 102 Ill. 2d 303, 309, 465 N.E.2d 85, 88.

Our examination of the record in this case leaves no doubt that

the trial court was both careful and conscientious in applying the "best interest of the child" rule and the above guidelines for its application from the *Presson* case, and we can find no basis that would justify a change in the court's order.

There can be no doubt that both parents love Mark and want the best for him. The father has made persistent and earnest attempts to establish what may be regarded as a normal father-son relationship. However, Mark's life has been lived thus far outside of a sphere that would engender and cultivate such a relationship. Mark was born out of wedlock. In his early years his father largely ignored him, did not pay for his support, and did not seek visitation upon any kind of regular basis. It was not until several months after plaintiff was released from prison that he became persistent in seeking out his son. Unfortunately for plaintiff, Mark had by that time become fixed upon the use of his long-time stepfather's name of Domyan. Moreover, the name Domyan was used in all official and unofficial records, except for the birth certificate and the Bluff school enrollment. Mark indicated to the court that it would be embarrassing and difficult for him to undergo a change of name from Domyan to Statham. Mark now knows full well who his father is and who his stepfather is. At 12½ years, he is at an age that he can recognize that there is a problem regarding his proper surname, but even so he may not yet be able to act upon the problem with a mature judgment. It is abundantly evident, however, that at this time Mark prefers to use the name of Domyan. The order of court upon the injunction has the effect of preventing any official change of name in a legal proceeding while maintaining the well established and long-continued status quo. By its order the court prevented Mark from suffering disruption and discord in his life while he awaits the few years until he can exercise his own judgment upon a choice of surname.

After years of neglect of his son, or, in fairness to plaintiff's position, after years of frustration of his purpose, the plaintiff is now regularly exercising his visitation privileges with Mark. Too, there can be no doubt that he is seeking in an earnest way to establish a meaningful father-son relationship with Mark. Although it is impossible from this vantage point to predict any outcome, certainly Mark will have an opportunity to gain another perspective regarding a proper choice of surname.

It must be regarded as too late to enjoin the use of Domyan as Mark's surname upon his "physical education records, book rental records, school term papers, school records, medical and dental records *** and in the Boy Scouts." That use has already been indulged for

years. As Mark told the court, such changes now would "create a problem." As noted in the *Presson* case, there are limitations upon the reach of a court order respecting the use of a name for a child and an order should not go beyond what it can effectively do. Here, the court was both fair and realistic in its treatment of Mark's parents but, in conforming to the overriding rule, we have determined that the court also acted in the best interests of the child.

Affirmed.

KARNS, P.J., and WELCH, J., concur.