FIFTH DIVISION

December 18, 1998

No. 1-97-4463 & 1-98-1523

In Re
 MARRIAGE OF SHERI ANN ) Appeal from the

CHARNOGORSKY, n/k/a Sheri Ann Hickey, ) Circuit Court of 

) Cook County.

Petitioner-Appellee, )

)

and ) 

)

JEFFREY T. CHARNOGORSKY, ) The Honorable

) Lisa Murphy,

Respondent-Appellant. ) Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

After the circuit court dissolved the marriage of respondent Jeffery T. Charnogorsky and petitioner Sheri Ann Charnogorsky, n/k/a Sheri Ann Hickey, a daughter was born to the parties.  Respondent filed a petition predicated upon an agreement between the parties to require petitioner to use the last name of each parent (Charnogorsky Hickey) for the child and the circuit court, finding no such agreement, denied the petition.  Respondent then filed a petition to change the child's name, but the circuit court denied that petition, ruling that respondent lacked standing under the applicable statute.  Respondent now appeals, arguing (1) that the circuit court erred in dismissing his petition to require petitioner to use Charnogorsky Hickey as the child's last name; (2) that the circuit court erred in finding that he lacked standing to bring a petition to change the child's name; and (3) that the statute that provides for a change of a child's name violates the equal protection requirements of the United States Constitution and the Illinois Constitution.  We affirm.

On August 31, 1990, the circuit court dissolved the parties' marriage.  At that time, no children had been born but petitioner was pregnant with respondent's child.  The judgment was based upon an agreement of the parties that included several provisions regarding custody and visitation of the unborn child.  However, the judgment reserved the issues pertaining to the child until after its birth.

On October 15, 1990, petitioner gave birth to a daughter.  On November 2, 1990, a supplemental judgment of dissolution was entered pursuant to the parties' agreement.  That judgment provided that petitioner had "sole legal and physical care, custody, control and education of the minor child" and that respondent had "reasonable visitation."  The judgment further stated that while respondent could participate, petitioner had "the final decision regarding all aspects and issues concerning the child, including but not limited to the child's health, education, welfare, and religion."  The child's name is not mentioned in the judgment; she is only referred to as "the child."

On October 22, 1996, respondent petitioned the court to require petitioner to use the child's last name of Charnogorsky Hickey when required to provide the child's last name.  The petition alleged that the child's legal name as listed on her birth certificate was Meagan Elyse Charnogorsky Hickey, but that respondent had discovered that the child was registered as Meagan Hickey in school.  Respondent alleged that petitioner never obtained a court order to change the child's name and that petitioner had no legal basis for unilaterally registering Meagan under the last name of Hickey.  Respondent requested the court to enter an order directing petitioner to use the child's correct last name of Charnogorsky Hickey.

Respondent filed a memorandum in support of his petition, alleging that the parties agreed that both parents' names would be used by the child.  A copy of the child's birth certificate was attached to the memorandum.  The certificate states that the child's name is "Meagan Elyse Charnogorsky Hickey."  The certificate does not definitively state which names are intended to be the middle name and which are the last name.  However, there is a larger space between Charnogorsky and Hickey than between Elyse and Charnogorsky.  Only petitioner signed the certificate.

Petitioner responded, contending that Charnogorsky was the child's second middle name and denying that the parties agreed to use both parents' last names as Meagan's last name.  Petitioner asked the court to dismiss the petition.

During a hearing on the matter, respondent testified that before he and petitioner divorced they discussed names for the child and narrowed their choices down to Meagan or Chelsea.  Respondent recalled a discussion at petitioner's parents' house where they discussed that they did not like how Chelsea Charnogorsky sounded and so they were going to use Meagan.  Respondent further stated that Elyse was the name that petitioner wanted to use for the middle name and they thought Meagan Elyse Charnogorsky sounded fine.

Respondent further stated that he expected that the name was going to be Meagan Elyse Charnogorsky.  He did not expect that Hickey would also be used when they were married.  He was unsure as to when he first became aware that petitioner was using the name of Hickey.  However, based on the birth certificate, which stated "Meagan Elyse Charnogorsky Hickey," he expected that the child would be called Meagan Charnogorsky Hickey.

Respondent testified that the first order he received from the court for initial visitation referred to the child as Meagan Elyse Charnogorsky-Hickey.  He was first aware that the child might not be using Meagan Charnogorsky Hickey when he received copies of labels of prescription bottles in 1994.  He called petitioner and she stated that Charnogorsky Hickey would not fit on the label.

Respondent also stated that he had been making investments in a trust fund for Meagan pursuant to the court order and that the title to the account included a hyphen between Charnogorsky and Hickey.  He mailed copies of the statements to petitioner, who did not advise him that this was not the child's correct name.

In the fall of 1996 when Meagan was in kindergarten, respondent attended an open house and Meagan was listed as Hickey, Meagan.  He then called petitioner and she told him for the first time that Hickey is Meagan's last name, Charnogorsky is Meagan's second middle name.  Respondent testified that Meagan was listed at her preschool and pediatrician's office as Charnogorsky Hickey.  The court asked respondent if they ever had any specific conversations regarding what last name the child would use and respondent stated "Yes."  However, he then referred only to the conversation before the dissolution in which they decided that they did not like the way Chelsea Charnogorsky sounded.  Respondent could not recall discussing what the child's name would be after he and petitioner separated.

Respondent stated that he did not know if petitioner signed the earlier order with the child's last name being hyphenated before it was entered.  He did not communicate with petitioner as to how the child's name would be listed on the investment account prior to opening it and he did not know who created the records at the preschool or the pediatrician's office.  He admitted that the wristband on the child at the hospital at birth stated "Hickey."  At that time, he spoke to the nurses and the card on the bassinet was changed to "Charnogorsky Hickey."  He did not mention this to petitioner.

Petitioner testified that while she and respondent were married they discussed Meagan's first and middle name.  She did not recall the conversation at her parent's home discussing the child's potential names, but she did not deny it and she admitted that they discussed the names Meagan and Chelsea.  Petitioner stated that the first time she told respondent that the child's last name was Hickey, not Charnogorsky Hickey, was in 1996 when respondent called her complaining that the health insurance company was not using her full name on medical forms.

Petitioner admitted that prior to the separation she never told respondent that she was not going to use Charnogorsky as the child's name and she decided around the time of Meagan's birth that she planned to use "Hickey."  She acknowledged that she never obtained respondent's consent to use the last name Hickey and she never sent him anything in writing indicating that she was only using that last name.  She testified that she believed the child's first name to be Meagan, the middle name to be Elyse Charnogorsky and the last name to be Hickey.  Petitioner has sole custody of the child.  She did not recall filing any court pleading with the child's last name and she did not recall reviewing the order with the child's name indicated as Charnogorsky-Hickey.

Respondent rested on this issue and petitioner moved for a directed finding.  The court found no evidence of an agreement to use the last name Charnogorsky Hickey and, thus, it denied the petition to require petitioner to use that surname for the child.  Respondent appealed from that order, case number 1-97-4463.

Respondent then filed a petition to change the child's name pursuant to section 21--101 of the Code of Civil Procedure (the Code) (735 ILCS 5/21--101 (West 1996)).  Petitioner moved to dismiss the petition, arguing that only a parent having legal custody of the minor child may bring a petition on behalf of a child to change her name.  The circuit court granted the motion to dismiss, ruling that respondent lacked standing under the statute.  The court also denied respondent's motion to reconsider.  Respondent appealed from the dismissal and from the denial of his motion to reconsider, case number 1-98-1523.  This court consolidated the cases.

Respondent contends the circuit court erred in dismissing his petition to require petitioner to use Charnogorsky Hickey as their child's last name.  Respondent initially asks this court to reverse the decision because the circuit court improperly barred him from offering the testimony of witnesses who would have testified as to the accuracy of the minor child's preschool records and the pediatrician's records.  

Petitioner points out that even if the lower court erred in barring the witnesses from testifying, this is not reversible error because respondent cannot show that the excluded testimony would have had an impact upon the outcome of the court's decision.  See 
Premier Electric Construction Co. v. American National Bank of Chicago
, 276 Ill. App. 3d 816, 831-32 (1995) (trial court's error in barring testimony of certain employees as expert witnesses for failure to comply with discovery requirements was harmless).  The record reveals that respondent was allowed to testify that Meagan's name was listed as Charnogorsky Hickey at the preschool and at the pediatrician's office.  Petitioner did not dispute this testimony; she testified that she was not responsible for the recordkeeping at the pediatrician's office and she was not responsible for, nor did she have authority to direct, how the preschool maintained its records.  Respondent has not demonstrated that the exclusion of these two witnesses who would have testified as to the accuracy of those records prejudiced the outcome of the court's ruling that there was no agreement between the parties.  We will not reverse on this issue.

Respondent argues that the circuit court erred in entering a directed finding that the parties did not enter an agreement that the child's last name would be Charnogorsky Hickey. After respondent rested, the court found that he had not presented a 
prima facie
 case.

When a circuit court grants a directed finding in favor of the defendant, a reviewing court must determine whether the lower court erred in deciding that the plaintiff failed to present a 
prima facie
 case.  
Elane v. St. Bernard Hospital
, 284 Ill. App. 3d 865, 872 (1996), citing 
Kokinis v. Kotrich
, 81 Ill. 2d 151, 155 (1980).  To establish a 
prima facie
 case, a plaintiff must present at least some evidence to support each element essential to his cause of action.  
Elane
, 284 Ill. App. 3d at 872.  This court will not reverse a lower court's ruling on this issue unless it is contrary to the manifest weight of the evidence.  
Elane
, 284 Ill. App. 3d at 872, citing 
Kokinis
, 81 Ill. 2d at 154.

 Respondent contends there was an implied agreement between the parties as to the child's name and that petitioner must abide by that agreement.  Illinois law recognizes two kinds of implied contracts, those implied in fact and those implied in law.  
Suarez v. Pierard
, 278 Ill. App. 3d 767, 773 (1996).  "A contract implied in fact imposes a contractual duty by reason of a promissory expression which may be inferred from the facts and circumstances and by expressions on the part of the promisor showing an intention to be bound."  
Suarez
, 278 Ill. App. 3d at 773.

Respondent contends the lower court's determination that no agreement existed should be reversed.  We disagree.  Respondent testified that, prior to the divorce, he and petitioner discussed potential names for the child and had narrowed their choices down to Meagan or Chelsea.  Respondent described a discussion at petitioner's parents' house with her father and mother in which they discussed the fact that they did not like the way Chelsea Charnogorsky sounded so they decided to use Meagan.  When asked by the court if the parties ever specifically discussed what the child's last name would be, respondent referred only to the conversation where they discussed that Chelsea Charnogorsky did not have a good sound to it.  He could not recall discussing the child's name after he and petitioner separated.

Petitioner stated that she decided around the time of Meagan's birth that she was going to use the name Hickey.  Petitioner did not recall the conversation at her parents' home discussing the child's potential names, but she agreed that while she and respondent were married they discussed the names Meagan and Chelsea.  She stated that prior to the separation she never told respondent that she was not going to use Charnogorsky as the child's last name and she never obtained respondent's consent to use the last name Hickey.  While the testimony may indicate that the parties discussed potential names for the child, it does not establish an agreement as to the child's last name.

Respondent also attempts to assert that petitioner's actions created an agreement.  He testified that the first order he received from the court for initial visitation referred to the child as Meagan Elyse Charnogorsky-Hickey.  However, he also admitted that he did not know if petitioner signed the order before it was entered.  Petitioner did not recall reviewing the order.  Respondent also testified that he made investments in a trust fund for Meagan with her name denoted as Meagan E. Charnogorsky-Hickey.  He mailed copies of these statements to petitioner and she never told him that was not the correct name of the child.  He also admitted, however, that he did not talk to petitioner about how the child's name would be listed on the account prior to opening it.

Respondent further stated that when Meagan had gone to preschool and the pediatrician, her name was listed as Charnogorsky Hickey.  He did not know, however, who created the records at the preschool or the pediatrician's office.  Respondent testified that the wristband on the child at the hospital for the first day stated Hickey.  When he saw the wristband, he spoke to the nurses and the card on the bassinet was changed to Charnogorsky Hickey.  But, he did not speak to petitioner about it at the time.

Upon review of the evidence, we cannot say that the circuit court's conclusion was against the manifest weight of the evidence.  The evidence regarding the parties' statements and actions does not require a finding that there was an express or an implied agreement as to the child's last name.  We therefore affirm the circuit court's dismissal of that petition.

Respondent also contends the circuit court erred in denying his petition to change the child's last name.  He brought his petition pursuant to section 21--101 of the Code, which provides:

"Proceedings;  parties.  If any person who is a resident of this State and has resided in this State for 6 months desires to change his or her name and to assume another name by which to be afterwards called and known, the person may file a petition in the circuit court of the county wherein he or she resides praying for that relief.  If it appears to the court that the conditions hereinafter mentioned have been complied with and that there is no reason why the prayer should not be granted, the court, by an order to be entered of record, may direct and provide that the name of that person be changed in accordance with the prayer in the petition.  ***  A petitioner may include his or her spouse and adult unmarried children, with their consent, and his or her minor children where it appears to the court that it is for their best interest, in the petition and prayer, and the court's order shall then include the spouse and children.  ***

An order shall be entered as to a minor only if the court finds by clear and convincing evidence that the change is necessary to serve the best interest of the child.  In determining the best interest of a minor child under this Section, the court shall consider all relevant factors, including:

(1) The wishes of the child's parents and any person acting as a parent who has physical custody of the child.

(2) The wishes of the child and the reasons for those wishes.  The court may interview the child in chambers to ascertain the child's wishes with respect to the change of name.  Counsel shall be present at the interview unless otherwise agreed upon by the parties.  The court shall cause a court reporter to be present who shall make a complete record of the interview instantaneously to be part of the record in the case.

(3) The interaction and interrelationship of the child with his or her parents or persons acting as parents who have physical custody of the child, step-parents, siblings, step-siblings, or any other person who may significantly affect the child's best interest.

(4) The child's adjustment to his or her home, school, and community."  735 ILCS 5/21-

-101 (West 1996).

Respondent contends that, based on the language of this section, the court should have considered the matter under the best interests standard and it was error to dismiss the petition for lack of standing.

Petitioner points out, however, that section 21--102 of the Code provides:

"Petition.  The petition shall set forth the name then held, the name sought to be assumed, the residence of the petitioner, the length of time the petitioner has resided in this State, and the state or country of the petitioner's nativity or supposed nativity.  
The petition shall be signed by the person petitioning or, in case of minors, by the parent or guardian having the legal custody of the minor
.
  
The petition shall be verified by the affidavit of some credible person."  (Emphasis added.)  735 ILCS 5/21--102 (West 1996).

Petitioner contends this section precludes respondent from bringing a petition under section 21--101 because respondent is not a parent or guardian having legal custody of the minor.  Respondent agreed that petitioner should have sole legal custody in the supplemental dissolution agreement.  Thus, petitioner contends the lower court properly granted her motion to dismiss pursuant to section 2--619 of the Code (735 ILCS 5/2--619 (West 1996)).  This court reviews a section 2--619 dismissal 
de novo
.  
Chadwick v. Al-Basha
, 295 Ill. App. 3d 75, 79 (1998).  

Research has not revealed case law dismissing a petition under section 21--101 for lack of standing.  In 
Dattilo v. Groth
, 222 Ill. App. 3d 467 (1991), a child was given the mother's last name when born to unmarried parents.  The father petitioned to change the child's last name to his last name and the trial court enter an order changing the child's name to have the father's name as a second middle name.  
Dattilo
, 222 Ill. App. 3d at 468.  This court affirmed, stating that the trial court properly could have found that to make the father's surname the child's middle name was in the child's best interest pursuant to the factors set forth in the statute regarding name changes (Ill. Rev. Stat. 1989, ch. 96, par. 1).  
Dattilo
, 222 Ill. App. 3d at 469-70.

There is no discussion in 
Dattilo
 as to the custodial arrangements of the parents, but the facts suggest that the father did not have legal custody of the child.  See 
Dattilo
, 222 Ill. App. 3d at 468.  Assuming that factual situation, 
Dattilo
 could then suggest that a noncustodial parent may have standing under the statute to change a child's name.  However, standing was not an issue in that case and standing is an affirmative defense that may be waived.  See 
In re Custody of McCarthy
, 157 Ill. App. 3d 377 (1987) (lack of standing is an affirmative defense that is waived unless raised during the pleading stage).  Thus, that case is not controlling on the case at hand.

In 
In re Marriage of Presson
, 102 Ill. 2d 303 (1984), the supreme court addressed the ability of one parent to enjoin the other from changing their child's name.  In that case, a father petitioned for a modification of the judgment of dissolution of marriage asking that the mother and her new husband be enjoined from legally changing the child's name.  The circuit court denied the injunction because the mother agreed that she would not attempt to legally change the child's name.  
Presson
, 102 Ill. 2d at 306.  But, the court entered an order providing that the child would use the father's surname until old enough to legally change it himself and the court ordered the parties and the child to use no other name for the child.  
Presson
, 102 Ill. 2d at 306.  

Citing prior cases decided by this court, 
In re Marriage of Omelson
, 112 Ill. App. 3d 725 (1983), and 
Solomon v. Solomon
, 5 Ill. App. 2d 297 (1955), the supreme court agreed that the changing of a child's name "is a matter incident to custody of the child" and the court that had jurisdiction over the divorce could entertain a petition enjoining the name change.  
Presson
, 102 Ill. 2d at 307.  The court recognized that the statute regarding name changes in effect at that time provided that a petitioner could include his minor child in a petition if the name change was in the child's best interest; the affidavit for a change of name of a minor must be signed by "'the parent or guardian having the legal custody of [the] minor'"; and, in the case of a minor, the notice of name change must be signed by the parent or guardian.  
Presson
, 102 Ill. 2d at 307, quoting Ill. Rev. Stat. 1979, ch. 96, pars. 1 to 3.  The court determined that the "statute clearly treats the change of name of a minor child as an incident to custody.  The standard applied, the best interest of the child, is identical to the standard used for custody determinations by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 602)."  
Presson
, 102 Ill. 2d at 307.

Relying on the best interest standard, the supreme court affirmed the trial court's order prohibiting the mother from changing the child's name.  
Presson
, 102 Ill. 2d at 313.  The court also ruled that enjoining the use of any other name for the child was overbroad to the extent that it extended to informal situations within the family, but found the order proper to the extent it enjoined the mother from changing the child's name in a legal proceeding or using any other name in official records.  
Presson
, 102 Ill. 2d at 313-14.

In 
Statham v. Domyan
, 153 Ill. App. 3d 1003 (1987), this court followed 
Presson
.  The father of a child born to unmarried parents filed suit and the court entered an order declaring his paternity and fixing visitation.  
Statham
, 153 Ill. App. 3d at 1003-04.  The father later filed a petition for an injunction seeking to restrain the mother from changing the child's surname to her new married name on any official records.  
Statham
, 153 Ill. App. 3d at 1004-05.  The court granted the petition to the extent that it restrained the mother from initiating legal proceedings to legally change the name of the child to her surname.  This court affirmed, finding no basis for changing the court's order.  
Statham
, 153 Ill. App. 3d at 1007; see also 
In re Marriage of Schaefer
, 161 Ill. App. 3d 841 (1987) (grant of noncustodial parent's request for injunction against name change of parties' minor children not against manifest weight of evidence).

These cases establish that a noncustodial parent can enjoin a custodial parent from bringing a petition to change their child's name as a matter incident to custody.  They do not, however, authorize a noncustodial parent to bring a petition to change their child's name under section 21--101, the statute for changing one's name.  Therefore, we affirm the circuit court's order dismissing respondent's petition because he did not have standing under section 21--101 of the Code.

We note that because the supreme court has ruled that changing of a child's name is a matter incident to a custody determination, it would appear that a dispute as to the child's name could also be resolved in a custody proceeding.  Although we need not resolve the issue at this time, we believe that based on 
Presson
, a parent could bring a petition to change his child's name under the court's authority regarding child custody issues in the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/601 
et seq.
 (West 1996)).
(footnote: 0)  Because respondent brought his petition pursuant to section 21-101 of the Code, however, we hold that the court properly dismissed the petition.  While respondent did bring the prior action attempting to require petitioner to use his last name as part of the child's last name, the narrow issue in that case questioned whether the parties had an agreement on that issue.  We do not believe respondent has yet sought the proper remedy from the court and we can only rule on the matter properly before us at this time.

Respondent also argues that if this court concludes that he lacks standing under section 21--101 of the Code, the court must declare that statute unconstitutional because it violates equal protection.  The Illinois Supreme Court has stated:

"The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner.  [Citation.]  While the government may not accord different treatment to persons who have been placed by statute into different classes on the basis of criteria wholly unrelated to the purpose of legislation, the equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people.  [Citation.]  The level of scrutiny applied in reviewing legislative classifications under the equal protection guarantee depends on the nature of the classification:  those based on race or national origin, or affecting fundamental rights, receive a heightened level of review under the strict scrutiny standard, whereas economic and social welfare legislation is reviewed under the highly deferential rational basis test."  
In re A.A.
, 181 Ill. 2d 32, 37 (1998).

Respondent asserts that the right to make decisions incident to the name of one's child is a fundamental right.  However, he provides no authority for this assertion.  All legislative enactments are presumed to be constitutional and a party challenging the constitutionality of a statute has the burden of establishing its constitutional infirmity.  
Fink v. Ryan
, 174 Ill. 2d 302, 308 (1996).  Petitioner contends that while this court has acknowledged that the interest of parents in the custody and care of their child is fundamental (see 
In re C.T.
, 281 Ill. App. 3d 189, 195 (1996)), there is no case law recognizing the naming of a child as a fundamental right.

Respondent also argues that the statute does not pass the rational basis test because the classification is not rationally related to a legitimate government interest.  "To withstand rational basis review, a statute 'need only be rationally related to a legitimate state goal' and must be upheld if any set of facts 'can reasonably be conceived' to justify the legislative classification."  
In re A.S.B.
, 293 Ill. App. 3d 836, 846 (1997), quoting 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 37 (1996).

Petitioner contends that the statute passes this test because the state has a legitimate interest in limiting the amount of litigation in which a child is involved and the state has an interest in having a consistent legislative scheme in matters of family law.  The statute for changing one's name is complementary to the Illinois Marriage and Dissolution of Marriage Act because it conveys decision making authority to the custodial parent.  We believe that the legislature could reasonably conclude that only parents with legal custody of a child should be allowed to petition for a change of that child's name.  A parent with legal custody of a child would be in the best position to bring a petition on behalf of the child.  Respondent has not sustained his burden of demonstrating an equal protection violation.

For the aforementioned reasons, we affirm the circuit court's rulings.

Affirmed.

HOURIHANE, P.J., and THEIS, J., concur.

FOOTNOTES
0:
We observe that in a case cited by respondent, 
Lassiter-Geers v. Reichenbach
, 492 A.2d 303, 303 Md. 88 (Ct. App. 1985), a court in Maryland ruled that the lower court that presided over the parents' dissolution proceeding had jurisdiction to consider a dispute regarding the surname of the child where the issue was raised during the dissolution proceedings.  However, not all jurisdictions recognize this issue as a matter incident to a custody determination.  See 
In re Marriage of Killman
, 955 P.2d 1228, 264 Kan. 33 (Kan. 1998) (court having jurisdiction over child's custody in dissolution proceedings did not have jurisdiction or statutory authority to change the name of the parties' child).