# Illinois Official Reports

## Appellate Court

<div style="border">

### *In re Estate of Andre T.*, 2018 IL App (1st) 172613

</div>

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE of ANDRE T., a Minor (Lillian M., Petitioner-Appellant, v. Andre T., Respondent-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-2613 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | March 8, 2018<br><br>April 10, 2018<br>April 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-P-6849; the Hon. Susan Kennedy Sullivan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Tia L. Haywood, of Haywood Monte Law Offices, of Chicago, for appellant.<br><br>Deborah Filipovich, of Chicago Volunteer Legal Services, of Chicago, for appellee. |

Panel                          JUSTICE McBRIDE delivered the judgment of the court, with
                               opinion.
                               Presiding Justice Burke and Justice Ellis concurred in the judgment
                               and opinion.

**OPINION**

¶ 1    Petitioner Lillian M. is the biological mother of minor Andre T., who was born January 15, 2003. In November 2016, Lorenzo S. and Patricia S., Andre T.'s paternal uncle and aunt, filed a petition for guardianship of Andre T. In March 2017, the trial court granted the petition over Lillian M.'s objection and appointed Lorenzo S. and Patricia S. as guardians for Andre T. (hereinafter, the Guardians). In June 2017, Lillian M., now represented by counsel, filed a motion to dismiss the order of guardianship. Lillian M. subsequently withdrew her motion to dismiss and filed a petition to discharge guardianship under section 11-14.1(b) of the Probate Act of 1975 (755 ILCS 5/11-14.1(b) (West 2016)). Prior to the evidentiary hearing on the petition, a guardian *ad litem* (GAL) was appointed to represent Andre T., and the GAL filed a motion *in limine* to clarify the issues to be raised at the hearing to those related to the petition for discharge and exclude Lillian M.'s arguments related to the entry of guardianship. The trial court granted the GAL's motion. At the evidentiary hearing, the trial court granted the GAL's motion for a directed finding following Lillian M.'s case and denied petitioner's petition to discharge guardianship.

¶ 2    Lillian M. appeals, arguing that the trial court erred by (1) granting the GAL's motion *in limine* limiting the issues for the evidentiary hearing, (2) admitting the GAL's supplemental report on the day of the evidentiary hearing, and (3) granting the GAL's motion for a directed finding and denying the petition to discharge guardianship.

¶ 3    Andre T. was a foster child from January 23, 2003, through May 21, 2008, when the juvenile court returned him to the care of Lillian M. In 2008, Lillian M. agreed to relinquish custody of Andre T. to the Guardians. Since 2008, the Guardians have been the primary caretakers of Andre T. The Guardians have stated that from 2008 to approximately 2011, Lillian M. had little or no contact with Andre T. From approximately 2011 until the filing of the petition for guardianship, Lillian M. has had regular contact and visitation with Andre T. while he lives with the Guardians.

¶ 4    In November 2016, the Guardians filed their initial petition for guardianship of Andre T. in the trial court. In their petition, the Guardians indicated that they were Andre T.'s paternal grandparents and that both parents' addresses were unknown. Andre T. nominated the Guardians as guardian of his person, but was 13 years old at the time of filing. An amended petition was filed in February 2017, at which time Andre T. was 14 and able to sign the nomination. The amended petition also correctly identified the Guardians as Andre T.'s paternal aunt and uncle and listed Lillian M.'s address. Lillian M. appeared *pro se* in the proceedings on the petition for guardianship and objected to its entry. In December 2016, the GAL was appointed for Andre T. and was ordered to conduct an investigation into Andre T.'s best interest and make a recommendation.

¶ 5        On March 24, 2017, the GAL filed a report. The GAL stated that Lillian M. and the Guardians differ in their accounts on visitation. Lillian M. stated that she saw Andre T. "nearly every weekend during the school year" and that Andre T. "spends summers primarily" with Lillian M. The Guardians stated that Andre T. spends two weekends per month with Lillian M. and spends the summer with the Guardians. The GAL noted that visitation and communication between Lillian M. and the Guardians had broken down.

¶ 6        The GAL interviewed Lillian M., the Guardians, and Andre T. Lillian M. was 52 years old and resided in the North Lawndale neighborhood in Chicago. Lillian M. has five children in addition to Andre T., but all other children are over 21 years old and reside outside of Lillian M.'s apartment. She has a two-bedroom apartment with rent "partially subsidized through the Department of Housing and Human [*sic*] Development." Lillian M. was employed at UPS, working four to five hours per day. She also receives social security disability benefits and SNAP benefits. Lillian M. has a history of drug abuse and criminal activity. Her last arrest occurred in May 2011, and her last drug-related arrest occurred in February 2010. Lillian M. stated she has been sober for six or seven years. The GAL had recommended a drug test for Lillian M., and the results were negative.

¶ 7        The Guardians are the paternal aunt and uncle of Andre T. Patricia S. is the sister of Andre T.'s father. Patricia has been a homemaker for 20 years, and Lorenzo was employed by the Chicago Fire Department for 23 years, but has now retired. Criminal background checks showed neither had a criminal history. They own a four-bedroom condo in the Woodlawn neighborhood and reside there with Andre T. and their 26-year-old son. The Guardians have four other children, but all are over 21 years old and reside outside of their home. Andre T.'s father is not a party to the case. The father visits Andre T. at the Guardians' home on an occasional basis, but no visits occur when Andre T. is with Lillian M. The GAL acknowledged the errors in the Guardians' initial petition and observed that the Guardians stated the errors were mistakes in filling out the form with the assistance of the Chicago Child Care Society.

¶ 8        The GAL interviewed Andre T., who was polite and cooperative, but seemed intimidated and apprehensive about the interview. The GAL informed Andre T. that the final decision of who he lived with was up the trial court and there was "no pressure." When asked for his thoughts on the topic, Andre T. "put his head down and declined to answer the question at all."

¶ 9        The GAL offered the following analysis:

"[Andre T.] is currently in the middle of two competing parties that each, in their own way, genuinely want the best for him and for his future. [The Guardians] have cared for [Andre T.] since he was a small child and, by all accounts, provide a safe and stable environment for [Andre T.] On the other hand, [Lillian M.] wants to regain custody of her son after dealing with her own troubled past. While her past behavior and criminal activity made her unfit to care for a child at the time, it has been almost six years since her last arrest.

[Lillian M.] should be commended on the positive direction that her life has taken over the past six or seven years and her desire to play a more active role in [Andre T.'s] life. A more important consideration, in the GAL's view, is the fact that [Andre T.] has spent his entire childhood in the care of [the Guardians]. [The Guardians] provide a safe and stable environment for [Andre T.] The GAL fears that completely disrupting the status quo by asking [Andre T.] to live with [Lillian M.] full time would be detrimental to [Andre T.] in the months before he starts high school."

¶ 10    The GAL recommended that a resolution of the matter would be in Andre T.'s best interest. The recommendation was for the Guardians to be granted guardianship, but with the stipulation that the Guardians and Lillian M. work together in good faith to provide Lillian M. with visitation on a consistent basis, at least two weekends per month.

¶ 11    On March 24, 2017, the trial court appointed the Guardians as guardians of Andre T. "over the objection of Lillian M. who may file a subsequent motion." The order further required that Lillian M. have visitation at least two weekends per month and that she be permitted to speak to Andre T. on the phone at reasonable times. The order also stated, "The GAL can untangle issues that arise regarding communication and visitation." Finally, the order stated, "The court wishes the adult cooperation that existed for years can be restored!" The case was taken off call.

¶ 12    On June 22, 2017, Lillian M., now represented by counsel, filed a motion to dismiss the case for lack of subject matter jurisdiction pursuant to section 2-619(a)(1) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(1) (West 2016)) and section 11-5(b) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-5(b) (West 2016)). The motion asserted that the trial court lacked subject matter jurisdiction to proceed on the guardianship petition filed by the Guardians, the Guardians lacked standing to petition to be guardians of Andre T., and no finding was entered that Lillian M. was unfit or unable and unwilling to care for Andre T.

¶ 13    On July 14, 2017, the trial court entered an order stating that Lillian M. withdrew her motion to dismiss and was given leave to file a petition to discharge guardianship, using a form petition. In her petition, Lillian M. listed as the following as the changes of circumstances: (1) the Guardians "lacked standing to petition for guardianship after a false misrepresentation on the initial petition, which was amended and continued over Lillian M.'s objection"; (2) "the Court lacks subject matter jurisdiction to proceed on a guardianship by a paternal aunt and uncle without a hearing as to whether Lillian M. is willing and able to carry out the day to day child care decisions"; and (3) Lillian M. "can carry out, has carried out day to day child care decisions concerning minor including the decision to temporarily allow minor to reside with the [Guardians]." In September 2017, Lillian M. filed a memorandum of law in support of her petition to discharge guardian, which offered the same reasons.

¶ 14    On October 2, 2017, the GAL filed a motion *in limine*, asking the trial court to "clarify certain issues for trial, and to prohibit the introduction of certain testimony and evidence." Specifically, the GAL contended that Lillian M.'s issues of standing, subject matter jurisdiction, and fraud are not relevant factors for a petition to discharge guardianship, which is governed by section 11-14.1 of the Probate Act (755 ILCS 5/11-14.1 (West 2016)). The GAL observed that the proper vehicle for Lillian M. to raise these issues was a "timely motion to vacate guardianship." In response, Lillian M. filed an "opposition to guardian *ad litem*'s motion *in limine*," arguing that she should be permitted to raise these issues in her petition as a motion to vacate pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)), which permits such relief from judgment.

¶ 15    On October 11, 2017, the trial court entered an order on the GAL's motion *in limine*. The court found that Lillian M., "through counsel, [responded] that the matters of subject matter jurisdiction, standing and fraud are relevant and probative. In addition, the mother argued the relevance of a Motion to Vacate, which has not been filed nor before the Court in any proper pleading." The court further held, "Given the option, the mother and her counsel informed the court the mother will proceed not on a Motion to Vacate, but only on the Petition to Discharge,

which was filed on July 14, 2017 set for hearing." The court then granted the GAL's motion for the following reasons:

"The issue of subject matter jurisdiction and standing are not relevant or probative to a Petition to Discharge. The fraud argument is moot because the mother appeared and participated in the court proceeding prior to any appointment of a guardian. To clarify the matter to be heard on October 19-20, the Court orders the testimony germane to the issues surrounding a Petition to Discharge can be heard, but the testimony cannot be used to argue original standing, jurisdiction or alleged fraud."

¶ 16 On October 19, 2017, the GAL filed a supplemental report based on interviews with Lillian M., the Guardians, and Andre T. The GAL observed that both Lillian M. and the Guardians reported how visitation has broken down but offered differing accounts. Both agreed that Andre T. has been "struggling with the litigation" and that he needs therapy. The GAL report detailed times in which Lillian M.'s attorney has contacted the GAL with complaints about the Guardians regarding travel without Lillian M.'s consent, taking him to the doctor, and taking him to the barber. The GAL informed counsel that the Guardians have legal authority for all these actions. The GAL detailed an incident over a haircut for Andre T. The Guardians took Andre T. for a required haircut for school where the barber "nicked" Andre T. and the haircut was bad. Lillian M.'s attorney contacted the GAL with photographs of Andre T.'s head. Lillian M. took Andre T. to a barber during visitation and the haircut was fixed. The GAL observed that the haircut incident was an example of Lillian M.'s inability to put Andre T.'s interests in front of her own.

¶ 17 The GAL observed that both Lillian M. and the Guardians love Andre T., and he is a "talented, smart, sweet young man, due in large part to the Guardians['] rearing." The GAL also acknowledged that despite her history, Lillian M. has "really begun to step up and feels she is finally ready to become [Andre T.'s] primary caregiver. Lillian M. must be commended for her growth not only personally, but as a parent." The GAL recommended that Andre T. remain with the Guardians because Lillian M. has not provided evidence of a change of circumstances since the appointment.

"It is unclear to me if this is due to [Lillian M.]'s hyper-focus on the fact that guardianship should have never been entered or if this is because the evidence just does not exist. Even if [Lillian M.] can prove a change in circumstances, it remains unclear whether [Lillian M.] can and will provide a stable environment for [Andre T.] on a full-time basis. Further, [Andre T.] is dealing with a great deal of turmoil given the litigation. It is for these reasons and the reasons below I believe it to be in [Andre T.'s] best interests to remain with his Guardians and not cause more sudden upheaval that he'll have to deal with."

¶ 18 The GAL further noted concerns that Lillian M. had never been the sole or primary caregiver for Andre T., and any transition to Lillian M. would be a "major adjustment" for Andre T. The report also discussed bad communication; Lillian M.'s misunderstanding of legal guardianship, leading to conflict; and Lillian M.'s lack of respect for the Guardians' authority. The GAL concluded as follows:

"Even though I do not recommend discharge at this particular point in time, I believe that if [Lillian M.] continues to make personal progress, does her part to communicate in a respectful manner with Guardians and continues to grow as a parent, discharge of Guardians is something that can be achieved in the near future. Given that

[Andre T.] has lived with Guardians so long, this is just a case that will take time in regard to transition to [Lillian M.]'s care. Very little time has passed since guardianship was granted. Ideally, I would like to see the following prior to discharging guardianship: [Lillian M.] consistently taking advantage of her visitation with [Andre T.], [Lillian M.] showing that she is working with the child on his homework during her visitation, [Lillian M.] particularly working to support Guardians' decisions and legal authority, and [Lillian M.] and Guardians working together to support one another. Additionally, I would like to hear from the minor's therapist after he is enrolled in regard to what [Andre T.] needs to promote his stability."

¶ 19   A hearing was conducted on Lillian M.'s petition to discharge guardianship on October 20, 2017. Following the presentation of Lillian M.'s case, the GAL moved for a directed finding, which the trial court granted in a written order. The record on appeal does not contain transcripts from the hearing.

¶ 20   The trial court's written order contains its findings and a brief summary of Lillian M.'s testimony at the hearing. Lillian M. testified that she agreed for Andre T. to remain with the Guardians through grade school. She has made contact at Kenwood Academy for Andre T. to attend. She stated that she receives social security disability and works at "Uniques for minimum wage" and full time at UPS. She receives Section 8 housing and has a two-bedroom apartment, but was looking for a larger place. The court observed that Lillian M. "made inconsistent statements surrounding the benefits she receives and her finances generally." She "testified at length about a bad haircut the minor received and how the co-guardians did not take him to her barber of preference." Two of Lillian M.'s other children also testified. "Each said or would say they love their mother, she is a good mother and she provides a good environment."

¶ 21   The court found that Lillian M.'s testimony failed to persuade the court that "but for rebutted evidence she had made material changes. She failed to provide sufficient [evidence] to establish the fact or raise the presumption she can take on the role of parenting full time." The court made the following finding:

> "The mother's testimony did not provide any significant time lines to establish the change. And, at times, during the testimony, the dates/years changed. The mother did not establish sufficient evidence of her current financial situation and confused the Court with her collecting SSI and government benefits while working full time. The mother's living situation seems unclear. The mother testified she could change her work hours to accommodate [Andre T.'s] schedule but could not explain how she could go from 'full-time' to 10am-3pm. The mother complained about the minor's need for therapy but, until recently, she held the medical card actually interfering with the co-guardians ability to obtain necessary medical treatment. She testified to life insurance on her life and on [Andre T.'s] life, but the document admitted into evidence indicates on her life, her daughter is the beneficiary—not this minor. The policy on [Andre T.'s] life, which is not complete, could not benefit [Andre T.] Although the mother referred to being with her son, there was no evidence articulating how often she sees him, the length of time they are together. Other than testimony from another son who is with her on some pick-ups and drop-offs, it is not clear about transportation plans. There was no testimony addressing [Andre T.'s] needs as a 14½ year old in high school. There was no information about the mother's awareness of his

academics—other than the mother saying she helps him with homework. The mother gave no testimony related to the minor's social life and how she would manage if he were to change schools."

¶ 22 The court granted the GAL's motion for a directed finding. The court noted that Lillian M. was "not precluded from filing another Petition to Discharge." The court ordered visitation with Lillian M. every other weekend and that communication between Lillian M. and the Guardians was to be through "Talking Parents an on-line, email type program intended to take the emotion out of the communication." The court further ordered the GAL to remain on the case and "NO ONE—other than the GAL—is to discuss the proceedings in this courtroom with the minor."

¶ 23 This appeal followed. Lillian M. filed a timely notice of appeal on October 20, 2017, listing the orders appealed from as the grant of the GAL's motion *in limine* and the grant of the directed finding. Accordingly, this court has jurisdiction of Lillian M.'s appeal regarding the petition to discharge proceedings under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 24 On appeal, Lillian M. argues that the trial court erred (1) in granting the GAL's motion for a directed finding at the hearing on her petition to discharge guardianship, (2) in granting the GAL's motion *in limine* limiting the subject matter at the hearing on her petition, and (3) in allowing the GAL to submit a supplemental report after discovery had closed.

¶ 25 Initially, we note that the record on appeal does not contain transcripts from either the hearing on the GAL's motion *in limine* or the evidentiary hearing on Lillian M.'s petition to discharge guardianship. Lillian M., as the appellant, bears the burden of providing a sufficiently complete record to support her claim or claims of error. In the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Moreover, any doubt arising from the incompleteness of the record will be resolved against the appellant. *Id.* at 392. Here, without a transcript or bystander's report, we are limited in our review to the trial court's orders. We presume that the trial court acted in conformity with the law at both the hearing on the motion *in limine* and the evidentiary hearing.

¶ 26 We first consider whether the trial court erred in granting the GAL's motion for a directed finding at the evidentiary hearing and denial of Lillian M.'s petition to discharge guardianship. "When a circuit court grants a directed finding in favor of the defendant, a reviewing court must determine whether the lower court erred in deciding that the plaintiff failed to present a *prima facie* case." *In re Marriage of Charnogorsky*, 302 Ill. App. 3d 649, 654 (1998). "To establish a *prima facie* case, a plaintiff must present at least some evidence to support each element essential to [her] cause of action." *Id.* "This court will not reverse a lower court's ruling on this issue unless it is contrary to the manifest weight of the evidence." *Id.*

¶ 27 Guardianship of a person includes a right to custody. 755 ILCS 5/11-13(a) (West 2016). "The most important consideration in child custody disputes is the best interest of the child." *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 461 (2004). A petition to discharge guardianship is governed by section 11-14.1(b) of the Probate Act. 755 ILCS 5/11-14.1(b) (West 2016). Section 11-14.1(b) codified prior case law requiring a natural parent to establish a change in circumstances when seeking to terminate a guardianship. See *In re K.E.S.*, 347 Ill. App. 3d at 462-63; *In re Estate of Wadman*, 110 Ill. App. 3d 302, 305 (1982).

¶ 28 Section 11-14.1(b) provides:

"Upon the filing of a petition by a minor's living, adoptive, or adjudicated parent whose parental rights have not been terminated, the court shall discharge the guardian and terminate the guardianship if the parent establishes, by a preponderance of the evidence, that a material change in the circumstances of the minor or the parent has occurred since the entry of the order appointing the guardian; unless the guardian establishes, by clear and convincing evidence, that termination of the guardianship would not be in the best interests of the minor. In determining the minor's best interests, the court shall consider all relevant factors including:

        (1) The interaction and interrelationship of the minor with the parent and members of the parent's household.

        (2) The ability of the parent to provide a safe, nurturing environment for the minor.

        (3) The relative stability of the parties and the minor.

        (4) The minor's adjustment to his or her home, school, and community, including the length of time that the minor has lived with the parent and the guardian.

        (5) The nature and extent of visitation between the parent and the minor and the guardian's ability and willingness to facilitate visitation." 755 ILCS 5/11-14.1(b) (West 2016).

¶ 29    Here, the trial court found that Lillian M. failed to establish a material change in circumstances occurred since the initial granting of guardianship of Andre T. to the Guardians. "The logic of this rule is that absent a change in circumstances, a court would be merely ruling on the exact issue previously decided." *Wadman*, 110 Ill. App. 3d at 305. While Lillian M. contends that the trial court erred in granting the GAL's motion for a directed finding, she fails to discuss any evidence she presented at the hearing to show a material change in circumstances as required under section 11-14.1(b). Rather, Lillian M. devotes this section in her brief to arguing about the GAL's role in the case, raising allegations against the Guardians, and suggesting that the GAL failed to act on behalf of Andre T. and improperly represented the Guardians' interests. None of these arguments relate to the change of circumstances Lillian M. was required to establish for her petition to discharge guardianship.

¶ 30    Lillian M. briefly contends that the "hostile communications are enough to warrant a finding of significant change of circumstances" to discharge the guardianship, but fails to cite any authority. Lillian M. misunderstands what she has to demonstrate to show a "material change of circumstances" under the statute. Instead, this argument further supports the GAL's observation that Lillian M. fails to put Andre T.'s needs before her own as the record indicates the "hostile communications" involve both Lillian M. and the Guardians to the detriment of Andre T.

¶ 31    In *Wadman*, the natural mother established a material change in circumstances by showing that since the entry of guardianship, she did not work late nights, changed her housing, made an effort to change the people with whom she associated, and no longer felt unable to cope with parenting. *Wadman*, 110 Ill. App. 3d at 307-08.

¶ 32    In contrast, the trial court in this case found:

        "The mother's testimony and those of her children failed to persuade the court that but for rebutted evidence she has made material changes. She failed to provide sufficient

[evidence] to establish the fact or raise the presumption she can take on the role of parenting full time."

¶ 33    Lillian M. has not set forth any argument or evidence to establish a material change in circumstances since the entry of guardianship. Accordingly, we find that the trial court's decision to grant a directed finding and to deny Lillian M.'s petition was not against the manifest weight of the evidence.

¶ 34    Next, Lillian M. asserts that the trial court erred in granting the GAL's motion *in limine* to exclude evidence irrelevant to a petition for guardianship. Specifically, she contends that the court erred in requiring her to file a separate petition to discharge guardianship and a motion to vacate under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)). She maintains that she should have been allowed to challenge subject matter jurisdiction and standing for the entry of the guardianship order as well as fraud based on the initial errors in the petition for guardianship. "A trial court's ruling on a motion *in limine* addressing the admission of evidence will not be disturbed on review absent a clear abuse of discretion." *Aguilar-Santos v. Briner*, 2017 IL App (1st) 153593, ¶ 61. "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the same view." *Id.*

¶ 35    The trial court entered the order appointing the Guardians on March 24, 2017. Lillian M. objected to the appointment, but failed to file any motion until June 22, 2017, when Lillian M.'s attorney filed a motion to dismiss pursuant to section 2-619 of the Code. At a July 2017 hearing, Lillian M. withdrew that motion and filed a petition to discharge guardianship. The GAL subsequently sought to limit the hearing on the petition to discharge to evidence related to that claim. At the hearing, Lillian M. opted to proceed on the petition to discharge only. The trial court correctly observed that Lillian M. never filed a motion to vacate judgment under section 2-1401 of the Code.

¶ 36    Initially, we point out that Lillian M.'s original motion to dismiss was untimely and the trial court lacked jurisdiction to consider that motion on its merits. Once a final order has been entered, the trial court retains jurisdiction for 30 days. *Harchut v. Oce/Bruning, Inc.*, 289 Ill. App. 3d 790, 793 (1997). Section 2-1202(c) of the Code provides that a posttrial motion must be filed within 30 days after the entry of judgment or "within any further time the court may allow within the 30 days or any extensions thereof." 735 ILCS 5/2-1202(c) (West 2016). "Hence, if the trial court extends the time for filing a posttrial motion beyond the initial 30-day period, that order must be entered within the 30-day period or within any period of extension already given." *In re Estate of Kunsch*, 342 Ill. App. 3d 552, 554 (2003). "Stated differently, when the 30-day period has expired without the entry of a new order setting a new deadline, the trial court loses jurisdiction over the case." *Id.* Here, the order appointing the Guardians was a final judgment, which gave Lillian M. 30 days to file a motion attacking that order. Instead, Lillian M.'s motion to dismiss under section 2-619 of the Code was filed nearly three months after the final order appointing the Guardians and was therefore untimely.

¶ 37    However, after a court loses jurisdiction, a party may seek relief from a final order by filing a motion under section 2-1401. 735 ILCS 5/2-1401 (West 2016). A section 2-1401 action is considered a new action rather than a continuation of the original action. *Harchut*, 289 Ill. App. 3d at 793; 735 ILCS 5/2-1401(b) (West 2016). In her brief, Lillian M. correctly points out that a motion to vacate under section 2-1401 is timely when filed within two years of the judgment. 735 ILCS 5/2-1401(c) (West 2016). However, as the trial court noted, Lillian M. never filed a

motion to vacate. Thus, any argument that the trial court should have allowed her to proceed with a motion to vacate is without merit.

¶ 38    The only filing pending before the trial court was a petition to discharge, which, as discussed above, is governed by section 11-14.1(b) of the Probate Act. Lillian M.'s arguments that she should have been permitted to raise issues related to the guardianship order fail because she failed to file any timely challenge of that order. As the trial court found, the issue of subject matter jurisdiction and standing were not probative to a petition to discharge, and the fraud argument was moot because Lillian M. participated in the guardianship proceedings. We find that the trial court properly limited the hearing on the petition to discharge guardianship to evidence germane to that proceeding. Accordingly, the trial court did not abuse its discretion in granting the GAL's motion *in limine*.

¶ 39    Finally, Lillian M. argues that the trial court erred in allowing the GAL's supplemental report to be admitted the day of trial after the close of discovery. Lillian M. contends that the supplemental report "operated as a surprise" to her counsel and "prejudiced" her. She asserts that the report was admitted over her objection. However, without a transcript of the hearing, we presume that the trial court properly allowed the supplemental report as any doubt arising from the incompleteness of the record will be resolved against the appellant. See *Foutch*, 99 Ill. 2d at 392. Further, we observe that the trial court's written order, granting the directed finding, does not discuss the GAL's supplemental report, but that the trial court's decision was based on Lillian M.'s testimony and evidence presented in her case. We find no error.

¶ 40    Lastly, we point out, as the trial court did as well, that Lillian M. is not prevented from filing a new petition to discharge guardianship, in which she can assert a change in circumstances. Since the order appointing the Guardians was entered on March 24, 2017, a section 2-1401 motion to vacate can be filed up to two years after its entry if Lillian M. wishes to pursue her claims. See 735 ILCS 5/2-1401(c) (West 2016). We offer no opinion on the potential outcome if Lillian M. seeks such relief.

¶ 41    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 42    Affirmed.